# BANK OF CHATSWORTH v. HAGEDORN CONSTRUC-
## TION COMPANY.

1. Where the office of county treasurer of Murray County was abolished, and where a board of supervisors of roads and revenues was established for said county, whose duty it was to deposit all moneys of said county in some solvent bank which would pay the highest rate of interest on daily balances, upon the bank so " selected as the depository for the . . funds of the county " giving ." a good and sufficient bond to indemnify the county against loss," and where it was made the duty of the bank selected as such depository to keep the accounts of the county, to receive and pay out the moneys of the county on proper vouchers approved by said board of supervisors, without charge or expense to the county, and to render to said board monthly itemized statements of all money received and paid out, a bank so selected as such county depository, upon acceptance of such appointment, became a quasi-public officer of the county in the handling of the moneys of the county, or at least a corporation owing duties to the public.

2. Where the County of Murray issued and sold $100,000 of its bonds for the improvement of its public roads and the building of public bridges within its borders, and where the Bank of Chatsworth submitted to the board of supervisors a written bid for the whole or any part of the- proceeds of said bonds, agreeing to give bond to hold said funds subject to the checks of the board, and to pay 5 per cent. interest on daily balances, and where said bid was accepted by the board, and the bank gave to the county a bond reciting that the bank had received from the county $100,000, being the proceeds of said road bonds, on which it had obligated itself to pay interest on daily balances at the rate of 5 per cent. per annum, and conditioned that the bank should faithfully keep and true accounting make for all of said sum and the interest thereon to the county, and said sum of money was turned over to the bank, the transaction between the bank and the county will be interpreted in the light of the law authorizing the board of supervisors to select a bank as the depository of the county funds; the terms of this law will be read into the contract between the bank and the county, and, giving this construction to the contract, the bank, became the county depository of these funds.

3. Where thereafter the State Highway Department turned over to the county the sum of $29,000 received from the United States in part payment of a road project undertaken by the county under contract, which was deposited in said bank, the contract of deposit between the bank and the county will be construed as embracing the terms of the statute referred to in the last headnote; and so construing this contract, the bank became a county depository of this fund.

4. Where a warrant was drawn on this road fund by the county commissioners in favor of a contractor who had completed a project for the improvement of a public road of this county, and payment thereof

was refused by the depository bank, mandamus will lie against such bank to compel it to pay such warrant.

5. Where the proper county authorities by formal resolution acknowledged the justness of a claim for a road improvement against the county, and ordered their clerk to issue to the claimant a warrant for the amount of such claim on the road fund at the Bank of Chatsworth, in which the road fund of the county had been deposited, and the warrant so drawn was presented to such depository bank for payment, which was refused by the bank, a petition by the holder of such warrant for mandamus to compel such bank to pay the warrant is not bad for lack of an allegation that on the date of such warrant the bank had on hand a sufficient amount of said road fund to pay the same.

6. When it is sought to enforce the payment of a county warrant for a claim which has been audited and allowed, a mandamus absolute will be refused, if it appears that there are no funds available to pay the same; but the lack of funds with which to pay such warrant, not appearing from the allegations of the petition for mandamus, is a matter of defense, and the presence of such funds need not be alleged in the petition.

*Quære*, whether mandamus will lie against the depository bank, if it should appear that it had misapplied all of the funds of the county on which the warrant was drawn, and for this reason was without funds to pay the same.

7. The court below did not err in overruling the demurrer and the motion to strike the petition.

No. 3314. AUGUST 10, 1923. REHEARING DENIED SEPTEMBER 11, 1923.

Mandamus. Before Judge Tarver. Murray superior court. July 1, 1922.

The Hagedorn Construction Company filed its petition for mandamus against the Bank of Chatsworth, and alleged: (1) that it is an Alabama corporation engaged in the business of road building; (2) that the Bank of Chatsworth is a bank organized under the laws of Georgia for conducting a banking business at Chatsworth in said county, and has an office and agent therein upon whom service can be had; (3) that some time prior to Dec. 3, 1919, Murray County issued and sold 100 bonds, aggregating $100,000, the proceeds of which were to be used for the purpose of improving public roads in said county, and building necessary bridges; (4) that upon the sale of said bonds said bank, having bid to become county depository for said road-bond fund, said bid having been accepted, and having tendered a bond in connection therewith, received said bond money from Murray County; (5) that a copy of said bid is attached to the petition as Exhibit A, and reference is prayed thereto; (6) a copy of the bond tendered by said bank is attached as Exhibit B, and reference is prayed to it;

(7) that by making said bid, executing said bond, and receiving said road fund, said bank became the duly constituted depository for said fund; (8) that by the act of the Georgia legislature approved Aug. 8, 1916, the office of county treasurer of Murray County was abolished, and the moneys belonging to said county were placed under the custody of the ordinary thereof, with direction to the officials having control of its fiscal affairs to place its funds in some solvent bank as a depository thereof, and to require said bank to give a good bond to indemnify the county against loss; it being further provided that the bank selected as depository should keep the accounts of the county, and receive and pay out its moneys on proper vouchers without charge or expense to the county; that by the act of Aug. 18, 1919, the board of supervisors of roads and revenues were authorized to deposit all moneys belonging to the county in some solvent bank therein paying the highest rate of interest on daily balances, and that said board should require the bank selected as depository to give a good bond to indemnify the county against loss, and such bank should keep the accounts of the county, and receive and pay out its moneys on proper vouchers approved by said board without charge to the county; (9) that under the law above set out, as well as under the laws of Georgia applicable thereto, said bank became treasurer of Murray County as to said road bond fund, and became charged with the duty of keeping said fund as well as keeping the accounts of the county applying to said fund, and of receiving and paying out its moneys in connection with said fund on proper vouchers approved by the proper county authorities; (10) by the act of the Georgia legislature, approved Aug. 12, 1921, said board of supervisors was abolished, and provision was made for the election of a board of commissioners of roads and revenues, which board were given, with other powers, the power to deposit county funds in some solvent bank of said county; (11) that on Nov. 24, 1920, the plaintiff entered into a contract with Murray County for construction and improvement of a highway known as Georgia Project 178, on the basis of a contract price approximating $66,964.27, of which the Georgia State Highway Department contracted to secure 50 per cent. through Federal aid; (12) at or prior to the time of entering into said contract, said county by resolution set apart a sufficient part of said road fund to pay its portion of said work;

(13) petitioner has fully performed its part of said contract, and said highway as constructed by it has been accepted by the State Highway Department; (14) there is still due petitioner, under the contract price, approximately $23,000, which is past due and unpaid; (15) the county has given to petitioner an order on the Georgia Highway Department for approximately $5,000, which has not yet been paid by said department on behalf of the Federal government, and petitioner has credited said sum on the amount due it by said county, leaving a balance due it by the county of approximately $18,000; (16) on March 21, 1922, the board of commissioners of roads and revenues adopted a resolution acknowledging the account of petitioner on Project 178, and ordering its clerk to issue petitioner a warrant for $17,725 on the amount due petitioner on said project and drawn on the road bond fund at the Bank of Chatsworth; (17) in accordance with said resolution said board issued and delivered petitioner on account its warrant on the Bank of Chatsworth for $17,725, as follows:

" Date        Detail          Amount.     No: 419.      $17,725.00
" On act. of Project 178.    $17,725.00 Chatsworth, Ga. 3-21-1922.
" Bank of Chatsworth, Chatsworth, Ga.

" Office of Board of Roads and Revenues Murray County.

" Pay out of road bond fund: Pay to the order of Hagedorn Construction Company seventeen thousand, seven hundred, twenty-five dollars. W. M. Harris, Clerk.

" When endorsed this check becomes a receipt in full of account rendered hereon."

(18) On March 21, 1922, within banking hours, petitioner presented said warrant to the Bank of Chatsworth for payment, which was refused; (19) as a reason for said refusal, the bank wrote across the back of said warrant as follows: " Ins. funds Bank of Chatsworth;" (20) defendant received from Murray County sufficient funds that were appropriated to the payment of said county's proportion of the contract price of Project 178 to have paid said warrant, and the amount of said warrant has not been paid out by said bank on Project 178, and said defendant should have, and in law is chargeable with having, sufficient funds to pay said warrant. Petitioner prayed for a mandamus nisi, which was issued.

Attached to the petition as Exhibit A was this bid:

"Bank of Chatsworth. Chatsworth, Ga., Dec. 3, 1919.

"To Board of Supervisors, Murray County.

"I hereby, for the Bank of Chatsworth, submit bid for the one hundred thousand dollars, or any part of same, of the road-bond money, as follows: Will pay 4-½% on the entire amount, or on such part as you may award to us. If this bid is accepted, the money will be subject to check in such amount as you may desire, interest being paid on the remaining balance. If awarded the money, will make surety company bond.

"No. 2: I hereby, for the Bank of Chatsworth, submit bid for the one hundred thousand dollars, or any part of same, of the road-bond money, as follows: Will pay 5% on the entire amount, or such part as you may award to us. If this bid be accepted, the money will be subject to check in such amounts as you may desire, interest being paid on the remaining balance. If awarded the money under this bid, will make personal bond. Attached herewith, statement of the condition of the bank above named, on the close of business Nov. 28th, 1919.

"Bank of Chatsworth, By Horace Dodd, Cashier."

Attached to the petition as Exhibit B was the bond of the Bank of Chatsworth with sureties, payable to the County of Murray, in the sum of $100,000, containing this condition: "The condition of the above obligation is such that whereas the said principal has received from County of Murray the sum of one hundred thousand dollars, roads-bonds money, and has obligated itself to·pay thereon interest on all balance of said money remaining from time to time in its custody, during the life of the said deposit of said money, at the rate of five per cent. per annum: Now should the said principal herein, the Bank of Chatsworth, faithfully keep and true accounting make for all of said sum of money and the interest thereon, to the said County of Murray, without loss thereto, then this bond to be void; else of full force and effect."

The defendant demurred to the original petition, substantially as follows: (1) that no facts are alleged which authorize the granting of a mandamus absolute; (2) that the facts set out show no official duties or obligations upon the defendant; (3) because there is not only a failure to allege any such duty, but a further failure to show, if there is any such duty, that there is no other specific legal remedy; (4) because the petition fails to show that the Bank

of Chatsworth is the official depository of the County of Murray, but on the contrary shows that as to the $100,000 referred to in the petition it is simply a bank of deposit, owing no duties or obligations other than those of debtor and creditor, which grow out of the relation of depositor and bank.

Thereafter the petitioner amended the petition, substantially as follows: The bank not only received the $100,000 referred to in the original petition, but also received $29,000 paid to Murray County by the Georgia State Highway Department, received from the United States Government in aid of roads and bridges being built in Murray County. The bank knew, and was chargeable with knowledge and notice, that all of said funds were to be devoted to improving the roads and bridges of Murray County, and could not lawfully be used for any other purpose. It was the duty of said Bank of Chatsworth to pay out said money for roads and bridges, and the repairing and improving thereof, and to pay out no warrants that were not drawn for such purpose. The Bank of Chatsworth knew, and was chargeable with knowledge, that the said Murray County had contracted with Hagedorn Construction Co. to construct Highway Project 178 for the sum of approximately $67,000, one half of which was to come from the Federal Government and the other half from Murray County out of its road money in the custody of the Bank of Chatsworth. On March 21, 1922, there was more than $17,725 of the funds deposited in the bank, for which lawful warrants for road purposes had not been issued prior to the date of the present warrant, and which the said bank either had in its possession, custody, or control, or should have had in its possession, custody, or control. Of the funds so deposited there was more than $18,000 unexpended for lawful road purposes at the time said warrant was presented to the Bank of Chatsworth for payment, and said bank should have paid the warrant.

To the petition as amended the Bank of Chatsworth demurred upon all the grounds of the original demurrer; and as follows: The original petition alleges that the $100,000 derived from the sale of said bonds was to be used for certain specific purposes therein named, to wit, improving the public roads of Murray County and building the necessary bridges for same; it nowhere appearing in the original petition, or in same as amended, that said funds

23

were not so used, and that, too, before the date of the warrant in controversy. The original petition shows upon its face that the funds deposited in the bank under contract marked Exhibit A were not paid into the bank by virtue of any law with reference to a depository of the County of Murray. Paragraph 12 of the original petition should be stricken as a pleader's conclusion; the county could act only through its board of supervisors acting as a body, in writing, which should show upon the minutes; the minutes and resolutions should be alleged to show the facts. Also should be stricken from paragraph 20 the words, " and said defendant should have, and is in law chargeable with having, sufficient funds to pay said warrant," this being a mere conclusion of the pleader, and not a statement of fact, and being unfounded as a matter of law. The petition as amended shows no contract as to the $29,000; the same was a mere deposit, to be paid out, as are all deposits, upon proper voucher; there was no bond or act of the county authorities making said bank a depository as to said sum. The allegation of paragraph 22 that said bank was chargeable with notice, etc., is irrelevant and immaterial to the issues, and unfounded as a matter of law. The allegations of a duty upon the bank as to paying out said funds, and as to paying no warrants not drawn for certain purposes, are irrelevant and immaterial to the issues; it was the duty of said bank to pay the checks of said supervisors, and it was not its duty to see that warrants were drawn upon it only for road and bridge purposes. Paragraph 23 of the petition should be stricken, it being immaterial whether said bank knew about Project 178, and because said bank was not chargeable with knowledge of said contract nor of the means or manner of paying the amount involved therein. Paragraph 24 should be stricken, it not being alleged that on March 21, 1922, there were any of said funds in said bank, and no allegation that all of said funds had not been paid out prior thereto upon checks of supervisors, as provided in contract Exhibit A; the allegation that said bank had in its possession such funds, or should have had them, stating a mere conclusion of the pleader, and not being an allegation that it did have same. It is merely a qualification, and means simply that the bank had, or should have had, said funds in its possession because they had not all been drawn out on lawful warrants for road purposes; it therefore being a mere conclusion of the pleader to the

effect that said checks were paid illegally if drawn by the super-visors, and were not a credit to said bank unless drawn for road purposes; and further, said paragraph assumes that payment of said funds on checks of the supervisors did not relieve said bank unless paid out for road purposes, thereby assuming it to be the duty of the bank to see what use was made of the funds drawn by the supervisors; and further, it is untrue that said sums were dedicated solely to road purposes, and therefore that the bank could be proceeded against unless all checks were drawn for road purposes; such funds being for road and bridge purposes, and not for road purposes purely. Paragraph 28 should be stricken as immaterial; for it might be admitted that $18,000 had not been expended for road purposes, and still there could be no rule absolute, because if said amount was paid out on warrants of the supervisors, the bank was under no obligation to determine whether said funds were for road purposes alone, for such funds might have been expended for bridge purposes. There is no allegation that said $18,000 was a part of the $100,000 road-bond money; and if a part of the $29,000 Federal government money, the relation of said bank and the supervisors was that of bank and depositor, and said fund can not be reached by mandamus. If said checks were in fact drawn for illegal purposes and so recognized by the bank, then the supervisors could not recover against the bank nor give to third parties a legal or binding warrant, recoverable by mandamus; and if issued illegally, then the County of Murray could recover in equity, but not the supervisors nor the transferee of the supervisors, by ordinary suit or mandamus. If said checks were legally drawn and the funds thereby exhausted, the bank not aiding in any misappropriation, there could be no recovery either by ordinary suit or mandamus; for knowledge on the part of the bank of the misappropriation must be shown and some act of the bank aiding or participating therein. Possession, or at least knowledge of the misappropriation on the part of the bank, must be shown, what sums misappropriated, when misappropriated, and how misappropriated, before there can be recovery by mandamus; it not being enough to allege that certain funds ought to be in the bank, but the facts should be fully set forth. The simple allegation that there ought to be $18,000 in said bank will not sustain a recovery by mandamus or otherwise; before there can be a re-

covery, it should be alleged that there are certain funds not checked out at all, or, in case there are no such funds, what funds ought to be in the bank but for said misappropriation, the sums misappropriated, the date misappropriated, and the conditions and circumstances of such misappropriation, so that the bank can properly meet the issues. That part of paragraph 24 of the amendment should be stricken which alleges that there was more than $17,725 of the road funds on deposit in said bank, for which warrants had not been issued by the county authorities, such allegation being a mere conclusion and being too general. The same is true as to that part of paragraph 25 of the amendment, alleging that there was more than $18,000 unexpended for lawful road purposes at the time of said warrant, March 21, 1922.

The court overruled the demurrer and motion to strike, and error is assigned upon this judgment.

*Jesse M. Sellers, W. C. Martin, Rosser, Slaton & Hopkins,* and *Smith, Hammond & Smith,* for plaintiff in error.

*Dorsey, Brewster, Howell & Heyman, Mark Bolding,* and *C. N. King,* contra.

HINES, J. (After stating the foregoing facts.)

1. One of the vital questions in this case is, what is the proper relation of the Bank of Chatsworth to the County of Murray and the public, under the arrangement by which it received and was to pay out the money arising from the sale of the bonds of the county issued for the purpose of the improvement of the public roads and the building of public bridges in that county, and arising from the contribution by the United States government toward the cost of Project 178? It is insisted by the bank that the relation between it and the county is the ordinary one existing between a bank and a depositor of funds therein. On the other hand, it is the contention of the petitioner that the relation between the bank and the county is that between a public officer, entrusted with the receipt, safe-keeping, and expenditure of the public funds of the county. If this relation was to be gathered solely from the terms expressly written into the contract, a copy of which is set out in Exhibit A, and nothing more appeared, then we would have to sustain the contention of the bank. On the face of the contract, and disassociated from certain laws to which we shall refer, the relation between the parties was that of a bank and its depositor.

But there are other matters to which we must look in determining what was the true relation between the parties. By the act of the legislature of Aug. 14, 1915 (Ga. Laws 1915, p. 319), the office of county treasurer was abolished from and after Jan. 1, 1917. By the act of Aug. 17, 1917 (Ga. Laws 1917, p. 375), "a board of supervisors of roads, bridges and road funds of the County of Murray" was established. By the act of Aug. 18, 1919 (Ga. Laws 1919, p. 706), it was provided "the board of supervisors of roads and revenues shall take charge of the treasurer's books of said county and all moneys belonging to said County of Murray, and shall deposit the same in the safety vaults of some solvent bank in said county that will pay the highest rate of interest on the daily balance." This act further declares: "That said board of supervisors shall require the bank selected as the depository for the books and funds of the county to give a good and sufficient bond to indemnify the county against loss." This act contains the provision: "That the said bank selected as a depository shall keep the accounts of the county, receive and pay out the moneys of the county on proper vouchers approved by the board of supervisors of roads and revenues of said county, without charge or expense to the county; . . that said bank shall render to the board of supervisors of the county monthly itemized statements of all money received or paid out." The bid of the bank for the road funds arising from the sale of the bonds issued and sold for the improvement of the public roads and for building the public bridges of this county must be construed in the light of the statutory provisions which entered into and formed a part of the contract between the county and the bank. *West End &c. Ry. Co.* v. *Atlanta Street R. Co.,* 49 *Ga.* 151; *Knorr* v. *Raymond,* 73 *Ga.* 749; Watkins *v.* Kobiela, 84 Neb. 422 (121 N. W. 448) ; People *v.* Mct. Surety Co., 211 N. Y. 107 (105 N. E. 99) ; 6 R. C. L. 855, § 243.

Thus construing this contract, the bank became a depository of this road fund of Murray County. But what about the deposit by the county in this bank of the $29,000 furnished by the Federal government to the county in part payment of the costs of Project 178 ? The circumstances under which this sum was deposited in the bank are not alleged in the petition as amended. In the amendment the plaintiff alleges that the bank, in addition to the $100,000 received from the sale of the county's road bonds, "also

received other large sums paid to Murray County by the Georgia State Highway Department, said funds being those received from the United States Government in aid of roads, bridges, etc., being built in Murray County, and that said additional sum so received by the Bank of Chatsworth aggregating at least $29,000." As to this sum, the bank received it, so far as appears, under an implied contract between it and the county for its receipt and disbursement. It is insisted by the bank that the implied contract under which this fund was received is the ordinary implied contract which arises when a depositor puts his money in a bank. The very able counsel for the defendant asserts that this court will presume that, prior to the sale of the road bonds and to the receipt of this latter sum, the supervisors had complied with the law, and had selected a county depository other than this bank. But why indulge such exclusive presumption? Why exclude the Bank of Chatsworth from this presumption? Conceding that we should indulge this general presumption, then we must likewise indulge the special presumption that the supervisors had either selected the Bank of Chatsworth as the depository of all county funds, or had selected it as the depository of these county road moneys. As to these road funds, we indulge the presumption that the Bank of Chatsworth received them under an implied contract to handle them as the depository of the county pro tanto at least; and the terms of the local act, providing for the selection of such depository, form a part and parcel of the implied contract, as they do of the express contract set out in Exhibit A. To indulge a contrary presumption would impute to the supervisors a violation of duty, and to the bank a participation therein.

2. Is such depository a quasi-public officer? The duties of the depository of funds of this county under this local act are the same duties which were discharged by the county treasurer before the latter was abolished. Such "depository shall keep the accounts of the county, receive and pay out the moneys of the county on proper vouchers approved by the board of supervisors of roads and revenues of said county." Ga. Laws 1919, p. 706. These were the principal duties of the county treasurer. Civil Code (1910), §§ 574, 576; *Smith* v. *Outlaw,* 64 *Ga.* 677. This court has held that a county treasurer is a public officer. *Bradford* v. *Justices,* 33 *Ga.* 332; *Massenburg* v. *Commissioners,* 96 *Ga.* 614 (23 S.

E. 998). It necessarily follows that an agency substituted in place of a county treasurer, whose office has been abolished by law, to discharge the same or similar duties of the latter, is at least a quasi-public officer. Such an agency selected in the manner prescribed by law, with the designation or title of depository given it by law, which exercises functions concerning the public assigned to it by law, is a public officer. *Bradford* v. *Justices,* supra. Certainly the bank is a corporation owing a public duty the discharge of which can be enforced by mandamus. Civil Code (1910), § 5442.

3. The Bank of Chatsworth, having been selected county depository of the road funds of Murray County, thus became a public officer of said county, against which mandamus will lie to compel it to pay a warrant drawn on such funds by the board of roads and revenues of said county, which succeeded the board of supervisors of said county, if such depository improperly refuses to pay such warrant. This court has held that mandamus will lie to compel a county treasurer to pay a warrant, drawn upon him, when payment thereof has been improperly refused by that officer. *Coleman* v. *Neal,* 8 *Ga.* 560; *State* v. *Bell,* 9 *Ga.* 334; *Shannon* v. *Reynolds,* 78 *Ga.* 760 (3 S. E. 653); *Neal Loan &c. Co.* v. *Chastain,* 121 *Ga.* 500 (49 S. E. 618); Civil Code (1910), § 5440. It follows that mandamus will lie against a county depository whose duties require him to receive and pay out county funds on proper vouchers.

4. This brings us to consider the question whether the petition makes out a case for a mandamus absolute against the defendant. A great many reasons are urged to show that the petition for mandamus does not state a case which entitles the plaintiff to a mandamus absolute. Some of these contentions, such as that the relation between the bank and county was that merely of bank and depositor, that the county depository is not a public officer, that it is not alleged that there is a general depository in the county, that it is not alleged that there was any other contract between the county and the bank than that set out in Exhibit A, that the $100,000 was deposited with the bank as a depository, and that such depository was not made the guardian of the county funds to the same extent as a county treasurer, have been disposed of by what is said above. Some, such as that it is not alleged that the contract between petitioner and the county was in writing and

spread upon the minutes of the supervisors, so as to be a binding, enforceable contract, are without merit. But the main one of these contentions of the very able counsel for petitioner is that it is not alleged that, at the date of the warrant in question, there was any part of the $129,000 deposited in the bank, not checked out by the supervisors, and that it is not alleged that, at the date of the warrant, the county had not drawn out all of the funds deposited in the bank, the allegation that on March 21, 1922, " lawful warrants for road purposes " issued by the county authorities had. not consumed all of said funds not being equivalent to an allegation that there was in fact a part of said funds in the bank, as, under Exhibit A, the bank was bound to honor the checks of the county, whether for lawful road purposes or not, and the allegation that at said time there was more than $18,000 of said funds unexpended for lawful road purposes not being equivalent to the charge that at the time there was in fact in the bank, unchecked out by the county, any part of said funds. This brings us to consider this contention of the defendant. Where the proper county authorities, by formal resolution, acknowledge the justness of a claim for a road improvement against the county and order their clerk to issue to the claimant a warrant for the amount of such claim " on the road fund at the Bank of Chatsworth," which is the county depository of said fund, which is done by said clerk, and the warrant so drawn is presented to such depository bank for payment, which is refused by the latter, all of the above facts being set out in the petition for mandamus, is such petition bad for lack of an allegation that on the date of such warrant the bank had on.hand a sufficient amount of said road fund to pay the warrant?

The resolution directing the clerk of the county commissioners to issue this warrant expressly.states that it is to be drawn " on the road fund at the Bank of Chatsworth." The claim for which the warrant issued had been audited by this board, and its justness acknowledged, and the liability of the county fixed by this formal resolution. The petition further alleges that the county authorities had set apart a sufficient amount of the road fund in the possession of the county depository for the payment of this claim. Under these circumstances the presumption arises that the county depository had on hand, at the date of the issuance of this warrant

and of its presentation for payment, a sufficient amount of the road fund to pay the same. It is undoubtedly true that, when it is sought to enforce payment of a county warrant for an audited and allowed claim, a mandamus absolute will be refused if it appears that there are no funds available to pay the same. State ex rel. Williams v. Hiers, 51 S. C. 388 (29 S. E. 89) ; State ex rel. Bryson v. Daniel, 52 S. C. 201 (29 S. E. 633) ; McCaslan v. Major, 64 S. C. 188 (41 S. E. 893). The lack of available funds to pay a county warrant is a matter of defense rather than a necessary factor of an applicant's case for mandamus. Since the presence or absence of such funds is a fact lying peculiarly within the knowledge of the officer whose duty it is to keep and pay out the funds of the county, and can rarely, if ever, be certainly known by the claimant except with the aid of such officer, it is but fair that when that defense is relied upon it should be alleged in the return of the officer to the mandamus nisi, so that an issue on that point can be made up and determined, with the burden upon the officer to show the absence of necessary funds. So we are of the opinion, that, to meet the above presumption of available funds to pay this county warrant, the burden is upon the defendant to set up lack of such funds as a defense in its answer to the mandamus nisi. So the application for mandamus in this case is not bad for lack of an allegation that the Bank of Chatsworth had in its possession, at the time of the issuance of this warrant, a sufficient amount of the road funds to pay the same.

We do not construe the statement in the petition, that the bank, on the presentation of this warrant for payment, entered thereon, when it refused its payment, a memorandum of insufficient funds, as an admission or allegation by the plaintiff that such memorandum was true. On the contrary we construe the petition as denying the truth of this memorandum placed upon the warrant by the bank. Nor do we construe the petition to set up that the fund properly applicable to the payment of this claim had been wrongfully diverted by the bank. If it appeared from the petition that the county depository had wrongfully applied all of these funds to the payment of claims to which they could not be rightly applied, then the question would arise whether mandamus would lie against an officer who had misapplied all funds applicable to the payment of a claim, when by reason of such misapplication he was without

funds to pay the same. See Universalist Church *v.* Columbia, 6 Ohio, 445 (27 Am. D. 267) ; Somerville *v.* Wood, 115 Ala. 534 (22 So. 476) ; Bates *v.* Porter, 74 Cal. 224 (15 Pac. 732) ; Township Board *v.* Boyd, 58 Mo. 276; Quaker City Ntl. Bk. *v.* Tacoma, 27 Wash. 259 (67 Pac. 710) ; Rice *v.* Walker, 44 Iowa, 458; Williams. *v.* New Haven, 68 Conn. 623 (36 Atl. 61) ; State *v.* Stanton, 14 Utah, 181 (46 Pac. 1109) ; In re Marvin, 60 Hun, 585 (15 N. Y. Supp. 500) ; Williamsport *v.* Commonwealth, 90 Pa. 498; People *v.* Treanor, 15 App. Div. 508 (44 N. Y. Supp. 528) ; Pouder *v.* Tate, 132 Ind. 327 (30 N. E. 880) ; State *v.* Craig, 69 Mo. 565; First Nat. Bk. *v.* Arthur, 12 Colo. App. 90 (54 Pac. 1107) ; Duval Co. *v.* Jacksonville, 36 Fla. 196 (18 So. 339, 29 L. R. A. 416) ; State *v.* Vanarsdale, 42 N. J. L. 536; People *v.* Stout, 23 Barb. (N. Y.) 338; Pike Co. Comrs. *v.* People, 11 Ill. 202. But this question is not now for decision by this court, as the lack of funds from any such misapplication does not appear from the petition in this case.

Neither are we now called upon to decide the question whether the bank would be liable for the payment of these funds upon checks or warrants of the supervisors for purposes other than the improvement of public roads or building of public bridges, as that question is not raised under the facts of this record.

5. If the trial judge committed any errors in his rulings upon the grounds of the special demurrer and motion to strike, they are not of sufficient moment to require a reversal.

*Judgment affirmed. All the Justices concur, except*

ATKINSON and GILBERT, JJ., dissenting. In pursuance of authority granted in article 11, section 3, paragraph 1, of the constitution as amended (Civil Code of 1910, § 6600), the office of county treasurer in Murray County was "abolished" from and after January 1, 1917. Acts 1915, p. 319. From and after the date last mentioned it was made the duty of the ordinary of Murray County to "take charge of the treasurer's books . . and all moneys belonging to said County . . and . . deposit the same in the safety vaults of some solvent bank in the county," (Acts 1916, p. 479), and it was the duty of "the officials having control of fiscal affairs of the county" (the board of commissioners of revenues, roads, bridges, and paupers, appointed under the act approved February 21, 1873 (Acts 1873, p. 282), as amended); to

"require the bank selected as the depository for the books and funds of the county, to give a good and sufficient bond to indemnify the county against all loss." And it devolved on the bank acting as depository to "keep the accounts of the county, receive and pay out the moneys of the county on proper vouchers approved by the ordinary of said county, without charge or expense to the county," and "render to the ordinary . . a monthly itemized statement of all money received or paid out." Acts 1916, p. 479. The "fiscal officers" of the county were changed by repeal of the act of 1873 as amended (Acts 1917, p. 374), and the passage of an act creating a board of supervisors of roads, bridges and road funds. Acts 1917, p. 375. This latter act provided that the ordinary should be chairman of the board. The statutory powers of the board were in part expressed in section 5, as follows: The board "shall have the authority to levy taxes for roads and for the purchase of tools and other road machinery, and for all other purposes necessary for the building of roads, bridges, culverts, drains, and all other road work; and that the said board shall be the custodian of all road funds, and that the said board shall not divert any part of said road fund from the purpose for which it was levied." In section 11 the board was given power also to "levy all the taxes for county purposes," and "to disburse the same under proper vouchers for the purpose for which said tax was levied." Subsequently another act was passed which was approved August 18, 1919 (Acts 1919, p. 706), and was as follows:

"An Act to put Murray treasury in charge of the Board of Supervisors of Roads and Revenues, an Act to authorize the Board of Supervisors of Roads and Revenues of Murray County to take charge of the treasurer's books and all moneys belonging to the said County of Murray, to transact the business of the county through some solvent bank, and for other purposes.

"Section 1. Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by authority of the same, that from and after the passage of this act the Board of Supervisors of Roads and Revenues shall take charge of the treasurer's books of said county and all moneys belonging to said County of Murray, and shall deposit the same in the safety vaults of some solvent bank in said county that will pay the highest rate of interest on the daily balance.

" Sec. 2.  Be it further enacted by the authority aforesaid, that said Board of Supervisors shall require the bank selected as the depository for the books and funds of the county, to give a good and sufficient bond to indemnify the county against loss.

" Sec. 3.  Be it further enacted by the authority aforesaid, that the said bank selected as a depository shall keep the accounts of the county, receive and pay out the moneys of the county on proper vouchers approved by the Board of Supervisors of Roads and Revenues of said county, without charge or expense to the county; provided further, that said bank shall render to the Board of Supervisors of the county monthly, itemized statements of all money received or paid out.

" Sec. 4.  Be it further enacted by the authority aforesaid, that all laws and parts of laws in conflict with this Act be and the same are hereby repealed."

The act of 1917 creating the board of supervisors was repealed, and a board of commissioners of roads and revenues created, upon whom the powers and duties of the board of supervisors devolved. Acts 1921, p. 538.  The county having issued one hundred bonds and sold them for $100,000, for the purpose of improving the public roads, the Bank of Chatsworth located in Murray County, acting by its cashier, on December 3, 1919, addressed the following bids to the board of supervisors:

" I, hereby, for the Bank of Chatsworth, submit bid for the one hundred thousand dollars, or any part of same, of the road-bond money, as follows:  Will pay 4-½% on the entire amount, or on such part as you may award to us.  If this bid is accepted, the money will be subject to check in such amount as you may desire, interest being paid on the remaining balance.  If awarded the money, will make surety company bond.

" No. 2:  I hereby, for the Bank of Chatsworth, submit bid for the one hundred thousand dollars, or any part of same, of the road-bond money, as follows:  Will pay 5% on the entire amount, or such part as you may award to us.  If this bid be accepted, the money will be subject to check in such amounts as you may desire, interest being paid on the remaining balance.  If awarded the money under this bid, will make personal bond.  Attached herewith, statement of the condition of the bond [bank?] above named, on the close of business Nov. 28th, 1919."  The bid No. 2

was accepted, and on December 10, 1919, the bank executed a bond with personal sureties, as follows: "Know all men by these presents, that the Bank of Chatsworth as principal, and R. M. Gudger, B. A. Gregory, T. L. Gregory, T. H. Keith, J. I. Hall, and A. J. Keith as security, are held and firmly bound unto the County of Murray in the sum of one hundred thousand dollars, for the payment of which, truly to be made, we bind ourselves jointly ·and severally, and our assigns, heirs, executors, and administrators firmly by these presents, waiving, each for himself and family, all homestead and exemption laws of this State and the United States, and all exemptions in bankruptcy. . . The condition of the above obligation is such that whereas the said principal has received from County of Murray the sum of one hundred thousand dollars, road-bonds money, and has obligated itself to pay thereon interest on all balance of said money remaining from time to time in its custody, during the life of the said deposit of said money, at the rate of five per cent per annum. Now should the said principal herein, the Bank of Chatsworth, faithfully keep and true accounting make for all of said sum of money, and the interest thereon, to the said County of Murray, without loss thereto, then this bond to be void, else of full force and effect." After execution of the bond the bank received the fund. Subsequently at different times, the dates not appearing, the bank received on deposit sums aggregating $29,000, which had been paid to the county by the Georgia State Highway Department from funds furnished by the United States Government for aid of roads, bridges, etc. On November 24, 1920, the Hagedorn Construction Company entered into a contract with the board of supervisors of the county, for the construction and improvement of certain public highways. The county became indebted to the construction company, and in 1922, after repeal of the act creating the board of supervisors and establishment of the board of roads and revenues, the latter issued a check against the "road-bond fund," as follows:

"Date       Detail       Amount       No. 419.       $17,725.00

"On act. of Project 178.   $17725.00 Chatsworth, Ga. 3-21-1922

"Bank of Chatsworth, Chatsworth, Ga.

"Office of Board of Roads and Revenues Murray County.

"Pay out of road bond fund: Pay to the order of Hagedorn Construction Company, seventeen thousand, seven hundred, twenty-five dollars. W. M. Harris, Clerk.

"When endorsed this check becomes a receipt in full of account rendered hereon."

On presentation the bank refused to pay the check, and wrote across the back of the paper "Ins. funds Bank of Chatsworth." On May 3, 1922, the Hagedorn Construction Company instituted mandamus proceedings against the Bank of Chatsworth, to compel it to pay the check. It was alleged that the bank received sufficient funds from the county, that were appropriated to payment of the contract price of the work contracted to be performed, to pay such contract price including the amount of the check, and that such amount had not been paid on such work, and the bank should have and was chargeable in law with having sufficient funds to pay the check; also that the bank knew of plaintiff's contract and knew that all of the funds so deposited with it were devoted to improving roads and bridges of the county and could not be lawfully used for any other purpose, and that it was the duty of the bank to pay out the money only for such purposes. The alleged reasons for grant of the writ of mandamus were: (1) That by making the bid and executing the bond and receiving the road-bond fund the Bank of Chatsworth became the duly constituted county depository as to such fund. (2) That under the law the Bank of Chatsworth became in fact the treasurer of the county and became chargeable with the duties of treasurer, and became specially chargeable with the duty of keeping the fund as well as keeping the accounts of the county and applying the fund on proper vouchers approved by the proper authorities of the county. The exception is to a judgment overruling general and special demurrers to the petition.

A controlling question in this case is whether mandamus is an appropriate remedy to compel payment of the check. It is provided by statute in this State: "All official duties should be faithfully fulfilled; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper fulfillment, the writ of mandamus may issue to compel a due performance, if there be no other specific legal remedy for the legal rights." Civil Code (1910), § 5540. "A private person may by mandamus enforce the performance by a corporation of a public duty as to matters in which he has a special interest." § 5542. "Mandamus does not lie as a private remedy between individuals to enforce private rights." § 5441. The section first quoted authorizes the writ to

enforce "official duties," which of course are duties that devolve
on a public officer, and hence relate to the individual; the second
authorizes the writ against a "corporation" to enforce perform-
ance of a "public duty." The last denies employment of the writ
to enforce private rights. It may be first inquired, did the bank
become an official depository within the meaning of the act of
1919, quoted above? That law should be construed in the light of
the former statutes which have been repealed. Formerly there
had been a treasurer of the county; but that office was abolished
by the act of 1915, supra. After abolition of the treasurer's office
the duty devolved on the ordinary under the act of 1916, supra, to
take charge of the treasurer's books and all moneys belonging to
the county, and deposit the same in the safety vaults of some
solvent bank in the county. Another duty imposed by the act was
upon old county commissioners holding appointments under the
act of 1873 as amended, to require the bank selected by the ordi-
nary as a depository for the books and funds of the county to give
a good and sufficient bond to indemnify the county against loss;
and it was provided that the bank acting as such depository should
keep the accounts of the county, receive and pay out the moneys
of the county on proper vouchers approved by the ordinary, with-
out charge or expense to the county, and render to the ordinary
a monthly itemized statement of money received or paid out. The
arrangement provided for in the act of 1916 just mentioned con-
templated all of the funds of the county, and authorized the
ordinary to deposit them in the "safety vaults" of a bank in the
county of his selection, the bank to give a good and sufficient bond
to idemnify the county against loss under requirement by the
county commissioners, and the bank to pay out the moneys on
proper vouchers approved by the ordinary. It is not clear what
benefit a bank selected as a depository under that act would re-
ceive for holding the funds in its safety vaults and paying it out
on proper vouchers approved by the ordinary and keeping the ac-
counts of the county, but the act of 1917, supra, provided for a
different arrangement. The board of supervisors of roads, bridges,
and road funds was created by that act. Under that law the only
connection the ordinary had with the funds of the county was as
a member of the board of supervisors, he being the chairman of
that board. The "road funds" of the county seem to have been

treated separately from other funds. It was declared: "That the said board shall be the custodian of all road funds," and in a different section of the act it was made the duty of the board of supervisors to "levy all the taxes for county purposes," and "to disburse the same under proper vouchers for the purpose for which said tax was levied." There was nothing said in this act about a depository. It will be perceived thus far that no provision was made by which the county funds should be let out at interest for the benefit of the county, or that the county should profit otherwise except in saving the fees that would have been payable to the treasurer had the office of treasurer continued, and the possibility of the accounts being better kept by the bank than when kept by the treasurer. In case of large amount of funds it would be to the advantage of the county for such funds while unexpended to draw interest. In these circumstances another change was made as provided in the act of 1919, supra. That act is set out in full, because it was under its provisions that the transactions occurred which are involved in this case. Its terms need not be repeated; but, as indicated by the caption and specified in the body of the act, the whole treasury, including the books and all the funds of the county, was put in charge of the board of supervisors who were required to "deposit the same in the safety vaults of some solvent bank in said county that will pay the highest rate of interest on the daily balance." The selection of the bank was a choice to be made by the supervisors, and when made and accepted the bank should become a depository for the books and all the funds of the county, and as such should give a bond to indemnify the county against loss and should keep the accounts of the county and receive and pay out the moneys of the county on proper vouchers approved by the board of supervisors. The law did not authorize the selection of more than one such depository or a selection of a depository for only a part of the county funds, but in order to come within the statute the bank should be selected as a depository for all of the funds of the county. This is a clear departure from the old law, marking a change of policy in the handling of county funds. It contemplates the selection of one bank as a depository for all the county on the basis of a contract between the board of supervisors and the bank, whereby title to county funds should vest in the bank and such funds mingled with the general funds

of the bank and be disposed of by the bank as a part of its general funds, the bank becoming the debtor of the county, to be repaid by payment of proper vouchers approved by the supervisors and by payment of interest on daily balances. The amount of interest was not specified by statute, and no particular bank was designated by the statute, but these were matters to be fixed by contract upon the part of the supervisors with any solvent bank of the county that would enter into a contract with them. While the conclusion was alleged in the petition that the Bank of Chatsworth became a depository under this statute the facts alleged in the petition show that the Bank of Chatsworth did not become any such depository. On questions raised by demurrer the petition must be construed most strongly against the pleader, and deficiencies will not be supplied by presumptions in his favor. The check is drawn against the county "road-bond fund." The bank had received from the county funds derived from two different sources. One was the road-bond money amounting to $100,000, for which the bank issued its bid, and the other was money aggregating $29,000 received from the Federal government that went on general deposit. The bid which was submitted by the bank and accepted by the board of supervisors was not a bid to become a statutory depository for all of the funds of the county. It was a bid " for $100,000, or any part of same of the road-bond money," and an offer " to pay 5% on the entire amount or such part as you may award to us," the money being " subject to check in such amounts " as the supervisors " may desire, interest being paid on the remaining balance." The bid was accepted, and the road-bond fund was turned over to the bank under the contract created by the making and acceptance of the above bid. The money so received became the road-bond fund. As the check was drawn against the road-bond fund it is not material for consideration in the case that other funds were afterwards received from the government which went on deposit without any express contract. The making and acceptance of the bid above mentioned and delivery by the board of supervisors of the road-bond fund to the bank created the entire relation between the county and the bank. It was a contract involving only a part of the county funds, and did not in any sense make the bank a statutory depository in the contemplation of the act of 1919. What has been said also answers the

24

contention that the bank became in fact the treasurer of the county. In the first place there could be no county treasurer in that county, because the office of treasurer had been abolished; and in the second place the act of 1919 does not purport to establish any office of treasurer, even if it would be competent for the legislature to do so. *McCants* v. *Layfield,* 149 *Ga.* 231 (99 S. E. 877). In the third place the office of treasurer, his powers and duties, is entirely provided for by statute. Civil Code (1910), §§ 564-578. The treasurer must have prescribed qualifications. He has a fixed term of office. He is elected in a prescribed manner. He must take a prescribed oath and give a bond payable to the ordinary of the county in a sum which in the judgment of the ordinary will be double the amount of the county tax for the ensuing year, receipts from all other sources, and cash on hand. All the powers and duties of a treasurer of a county are prescribed by law, and are distinctly public and official in character. A treasurer acquires no personal interest in the property coming into his hands, and does not pay interest to the county for balances in his hands. His functions are purely ministerial and fiduciary in character. Any personal use of the county funds by him would be a conversion. Sufficient has been said in regard to a county treasurer to show that the facts alleged in the petition as to the relation between the bank and the County of Murray did not constitute the bank a county treasurer. As already stated, the petition was projected on the theory that the bank was a public officer such as a treasurer, and that mandamus would be an appropriate remedy under the provisions of the Civil Code, § 5440. If it were necessary to go further and inquire whether the plaintiff would be entitled to that remedy under § 5442, it should be held that the remedy should not be applied under that section. That section authorizes a private individual whose interests are affected to employ the writ of mandamus against any corporation owing a duty to the public, to compel it to perform it. That section is based on the decisions in *Habersham* v. *Savannah &c. Canal Co.,* 26 *Ga.* 665, and *Savannah &c. Canal Co.* v. *Shuman,* 91 *Ga.* 400 (17 S. E. 937, 44 Am. St. R. 43). They were cases in which a corporation obstructed certain public ways and where plaintiffs as members of the public were entitled to have the obstruction removed. There was no other adequate relief; and it was

held that the corporation was under a duty to the public to remove the obstructions, and that for refusal to remove them the plaintiff was entitled to employ the writ of mandamus to compel the removal; and numerous cases have since been decided, holding that railroads and other corporations owing a duty to the public could be required by mandamus to perform such duty, in a suit instituted by an individual whose interest was affected by a failure to perform such duty; but that is not the case now under consideration. The duty of the bank is not to the public, imposed by law. To be a public duty it must be imposed by law. If it is imposed by contract it is a private duty, and that will not be enforced by mandamus. A duty of that character would be controlled by the provisions of the Civil Code (1910), § 5441: "Mandamus does not lie as a private remedy between individuals to enforce private rights." When the authority was granted under the act of 1919, supra, to the county supervisors to make a loan of the county funds to the bank in consideration of interest to be paid and other services to be performed, the duties to the county which the bank assumed were private in character and stood on the basis of any other private contract. If the bank was guilty of a breach of contract, the county could obtain the same relief in a suit at common law against the bank that it could have obtained by writ of mandamus to compel payment of the amount of money that the bank was under duty to pay. Again, as the bank was the debtor of the county, the appropriate remedy would be to sue for the debt. The writ of mandamus may be enforced penally and for a contempt, which could not be employed merely as a means of collecting a debt.

If it were necessary to deal with the deposit of $29,000, it should be held, in the first place, that the check by its terms was not drawn against that fund; and in the second place, that the money was placed on deposit under the implied contract which usually arises where money is deposited for a bank to be drawn out on check of the depositor, and that the deposit of such fund did not make the Bank of Chatsworth a statutory depository under the act of 1919. It did not purport to be a deposit of all the money of the county, but expressly appeared to be a deposit of a specific sum intended to be mingled with general funds of the bank and to be drawn upon by checks of supervisors. For reasons already in-

dicated the bank did not owe the county any public duty as to this fund. It owed it a private duty to pay the checks of the supervisors when properly drawn and presented, and for a breach of that duty the supervisors had a specific remedy by suit for the amount of this deposit.

The foregoing considerations are addressed to appropriateness of the remedy; but if it be conceded that mandamus be an appropriate remedy, the petition as amended fails to allege a cause of action.