[No. 15556.	Department Two.—December 3, 1894.]

## ISAAC LUNDY ET AL., RESPONDENTS, v. D. M. DEL-MAS ET AL., APPELLANTS.

UNIVERSITY OF CALIFORNIA—REGENTS—CORPORATION.—The regents of the
University of California, under the organic act of March 23, 1868, and
the subsequent steps taken by them to incorporate, became and are a
corporation.

ID.—REGENTS NOT INDIVIDUALLY LIABLE FOR NEGLIGENCE.—The regents
of the University of California are not individually liable for the negli-
gence of the corporation in failing to properly maintain a telegraph line
belonging to it.

ID.—REGENTS NOT PUBLIC OFFICERS.—Under the provisions of the organic
act of March 23, 1868, and of section 9 of article IX of the constitution,
the regents are not public officers. Section 343 of the Political Code
designating them as "civil executive officers," was repealed by said
section of the constitution.

APPEAL from a judgment of the Superior Court of Santa Clara County.

The facts are stated in the opinion of the court.

*J. B. Mhoon*, and *D. M. Delmas*, for Appellants.

*Frs. E. Spencer*, and *D. W. Burchard*, for Respondents.

The COURT.—The plaintiffs brought this action against the defendants, who are sixteen of the regents of the University of California, to recover damages against them, in their individual capacity, for the death of Daniel Lundy, plaintiffs' father.

It is alleged in the complaint: "That on and for a long time prior to the sixteenth day of November, 1891, each and all of said defendants were, and from thence hitherto have been and yet are, the regents of the University of California, and during all of said time were acting as such, and exercised the duties and assumed the obligations of such regents, and as the board of such regents.

"That, among other things, said defendants, as said regents and as such board of regents, all of said time, as part of their power and duty, constructed, and during all of said time maintained, a telegraph and telephone line from the city of San Jose, in said county of Santa Clara, to the Lick observatory on Mount Hamilton in said county, which said line consisted of wires strung upon poles planted in the ground along and near the public highway.

" That said defendants, as said regents, so negligently maintained said telegraph and telephone line that by their culpable negligence and inattention they allowed divers of said poles thereof to rot and decay away, and to fall to the ground by reason of their rotten condition.

"That a short time prior to said sixteenth day of November, 1891, one or more of said poles had become rotted, as aforesaid, and by reason of such rotting allowed to fall to the ground in such manner and place

that the said wires attached thereto were brought across the public highway in such near position to the ground as to endanger the lives of persons traveling thereon.

" That said wires were so negligently left in said dangerous position by said defendants, and that by reason thereof one Daniel Lundy, who was then on said sixteenth day of November, 1891, traveling along said highway, was, without any fault on his part, caught by said wires and thrown to the ground, and instantly killed."

The case was tried before a jury, and the verdict was in favor of plaintiffs for ten thousand dollars, on which judgment was entered.

At the close of plaintiffs' evidence the defendants moved for a nonsuit upon the grounds:

" 1. The evidence shows that the regents of the University of California is, and has been since 1868, a corporation duly organized under the laws of this state; that at the time of the injuries complained of, and for more than a year before, said corporation owned, managed, and maintained the telegraph and telephone lines mentioned in the complaint; that the duty of maintaining said lines rested upon said corporation, and it alone is responsible for any negligence in the performance of said duty.

.    .    .    .    .    .    .    .    .    .    .

" 3. The action being based upon negligence, it is necessary for the plaintiffs to show negligence on the part of the defendants; but there is no evidence of such negligence.   The negligence shown, if any, is the negligence of the corporation called the Regents of the University of California, which as owner of the lines in question owed to the plaintiffs' father the duty of maintaining said lines in proper condition.   The defendants did not owe said duty, and cannot be found guilty of negligence from the fact—if fact it be—that said duty has not been discharged."

The court denied the motion, and whether it erred in so doing or not is the only question presented for decision.

In 1868 an act was passed by the legislature and approved March 23d, entitled "An act to create and organize the University of California." (Stats. 1867–68, p. 248.)

Section 1 of the act declares that "A state university is hereby created, pursuant to the requirements of section 4, article IX, of the constitution of the state of California." And section 11 provides: "The general government and superintendence of the university shall vest in a board of regents, to be denominated the 'Regents of the University of California,' who shall become incorporated under the general laws of the state of California by that corporate name and style. The said board shall consist of twenty-two members, all of whom shall be citizens and permanent residents of the state of California, as follows":

There were to be six *ex officio* members, namely, the governor, lieutenant governor, superintendent of public instruction, and three others, "eight other appointed members to be nominated by the governor by and with the advice and consent of the senate," and "eight additional honorary members to be chosen from the body of the state by the official and appointed members."

The section further provides that "No member of the board of regents or of the university shall be deemed a public officer by virtue of such membership, or required to take any oath of office; but his employment as such shall be held and deemed to be exclusively a private trust."

On June 18, 1868, a certificate properly executed by the governor, lieutenant governor, and superintendent of public instruction was filed in the office of the secretary of state, certifying that, in pursuance of the provisions of the said act of March 23d, they, "three of the persons indicated in and by such enactment as trustees and directors of the corporation thereby directed to be created, have associated ourselves together for the purposes mentioned in and by said enactment, and to form a corporation for such purpose by the name and

style designated in and by said enactment, which is 'The Regents of the University of California.'"

By section 343 of the Political Code, which took effect January 1, 1873, it is provided: "The number and designation of the civil executive officers are as follows: A governor, a private secretary for the governor, . . . . twenty-two regents of the University of California."

And by section 9 of article IX of the constitution it is provided: "The University of California shall constitute a public trust, and its organization and government shall be perpetually continued in the form and character prescribed by the organic act creating the same, passed March twenty-third, eighteen hundred and sixty-eight (and the several acts amendatory thereof)."

The first question is, Did the regents under the provisions of the organic act, and the steps taken to incorporate, become a corporation? We think this question must be answered in the affirmative. At least, when they exercised corporate powers they became a corporation *de facto*, the validity of which could only be attacked and tested by proceedings on behalf of the people of the state.

This conclusion seems to be fully warranted by the provision of the constitution above quoted, that "its organization and government shall be perpetually continued in the form and character prescribed by the organic act." The organization of the university, prescribed by the act referred to, was to be in form and character a corporation, denominated the "Regents of the University of California," and in that corporation the government of the university was to be vested.

This being so, the only remaining question is, Were the defendants individually liable for the damages sustained by plaintiffs by reason of the death of their father?

The rule undoubtedly is that public officers are answerable in damages to any one specially injured by their neglect or omission to perform the duties of their offices. But the defendants were not public officers. The act of

March 23, 1868, declared that no member of the board of regents should be deemed a public officer by virtue of his membership, and the provision of the Political Code, naming the regents as "civil executive officers," was in effect abrogated by the constitutional provision above quoted.

The question in hand has never, so far as we are advised, been before this court, but a similar question was before the court of appeals of the state of New York, in the case of *Bassett* v. *Fish*, 75 N. Y. 303, and was very elaborately considered and discussed by Mr. Justice Folger.

The action was brought against the defendants, as trustees of a school district, for negligence in suffering the floor of one of the recitation rooms in the schoolhouse in the district to become and remain out of repair, in consequence of which plaintiff, who was employed as a teacher in the school, stepped through a hole in the floor and was injured. It was held that under the statute the defendants constituted a corporation, and that "for a neglect to perform a duty imposed upon such a corporation, the members of the board are not individually liable; the neglect is that of the corporate body, not of the individuals composing it, and the liability rests upon it."

We think that case was correctly decided, and it follows, therefore, that the court below should have granted the motion for nonsuit in this case.

The judgment must be reversed, and it is so ordered.