Bear Gulch Water Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 87921.   Promulgated December 26, 1939.

*Herbert E. Hall, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

## OPINION.

HARRON: The broad issue presented is whether the petitioner's net income for each year, 1933 and 1934, is exempt from Federal income tax under the provisions of section 116 (d) of the Revenue Acts of 1932 and 1934. The pertinent statutory provision is quoted in full below.[1]

---

[1] SEC. 116. EXCLUSIONS FROM GROSS INCOME.

      *          *          *          *          *          *          *

(d) INCOME OF STATES, MUNICIPALITIES, ETC.—Income derived from any public utility or the exercise of any essential governmental function and accruing to any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory, or income accruing to the Government of any possession of the United States, or any political subdivision thereof.

Whenever any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory, prior to September 8, 1916, entered in good faith into a contract with any person, the object and purpose of which is to acquire, construct, operate, or maintain a public utility—

(1) If by the terms of such contract the tax imposed by this title is to be paid out of the proceeds from the operation of such public utility, prior to any division of such proceeds between the person and the State, Territory, political subdivision, or the District of Columbia, and if, but for the imposition of the tax imposed by this title, a part of such proceeds for the taxable year would accrue directly to or for the use of such State, Territory, political subdivision, or the District of Columbia, then a tax upon the net income

The facts show that petitioner is a private corporation engaged in the business of selling water to private consumers in residential communities. Petitioner does not furnish water for public uses and it was not organized to furnish water to citizens of any community for any municipal government, or under any contract with a municipal government, or political subdivision of the State of California. Cf. *Jamestown & Newport Ferry Co.*, 16 B. T. A. 638; reversed, 41 Fed. (2d) 920; *Citizens' Water Co.*, 32 B. T. A. 750; affd., 87 Fed. (2d) 874; certiorari denied, 302 U. S. 694. In the taxable years all of the capital stock of petitioner, and all of its outstanding bonds were owned by the Regents of the University of California, a corporation existing under the constitution of the State of California,[2] and were held by the regents for the benefit of the university. In the hands of the regents, the stock and the bonds of petitioner were the same as investment holdings, held to produce income for maintaining the College of Commerce and for general uses of the university. The regents manage and invest the funds of a general endowment pool, and the stock which was not acquired by gift, and the bonds were both acquired by investment of funds in the hands of the regents.

Petitioner's business was a business enterprise conducted for gain.

Petitioner contends that its corporate entity should be disregarded, and that it should be held that its business was an enterprise conducted by the Regents of the University of California without any intervening corporate person, so as to make its income in the taxable year the income of the regents. Petitioner contends, further, that the Regents of the University of California is part of the entity

from the operation of such public utility shall be levied, assessed, collected, and paid in the manner and at the rates prescribed in this title, but there shall be refunded to such State, Territory, political subdivision, or the District of Columbia (under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary) an amount which bears the same relation to the amount of the tax as the amount which (but for the imposition of the tax imposed by this title) would have accrued directly to or for the use of such State, Territory, political subdivision, or the District of Columbia, bears to the amount of the net income from the operation of such public utility for such taxable year.

(2) If by the terms of such contract no part of the proceeds from the operation of the public utility for the taxable year would, irrespective of the tax imposed by this title, accrue directly to or for the use of such State, Territory, political subdivision, or the District of Columbia, then the tax upon the net income of such person from the operation of such public utility shall be levied, assessed, collected, and paid in the manner and at the rates prescribed in this title.

[2] Article IX, section 9, of the Constitution of the State of California.—

The University of California shall constitute a public trust, to be administered by the existing corporation known as "The Regents of the University of California," with full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance within the terms of the endowments of the university and the security of its funds. * * * Said corporation shall be vested with the legal title and the management and disposition of the property of the university and of property held for its benefit and shall have the power to take and hold, either by purchase or by donation, or gift, testamentary or otherwise, or in any other manner, without restriction, all real and personal property for the benefit of the university or incidental to its conduct.

which the university constitutes, and that the entity of the university constitutes a political subdivision of the State of California, or a branch of the state itself, by virtue of its creation by statute.

We disagree with the contention that, under the facts, the entity of petitioner, as a corporation, is not a separate entity. It is well settled that, for purposes of taxation as well as for other purposes, a corporation is a taxable entity separate and distinct from its stockholders. Petitioner's stock is held in the name of the Regents of the University of California, which is a private corporation, charged with the public trust of the general government and superintendence of the University of California. *City Street Improvement Co. v. Regents of the University of California*, 153 Cal. 776; 96 Pac. 801; *In Re Royer's Estate*, 123 Cal. 614; 56 Pac. 461. The powers and duties of the regents are prescribed by statute. See article IX, section 9, of the Constitution of California, *supra*, and section 1432 of the Political Code of California. While the regents are authorized to hold title to property for the benefit of the university, they are not authorized to engage in a private business for gain. It is open to question, at least, whether the power conferred upon the regents to manage and dispose of the property of the university extends to and is an authorization to engage in a private business enterprise. Petitioner offers no proof to support that proposition. Petitioner's theory that it is not a separate corporate entity, in itself, amounts to alleging that it is a corporation within a corporation. Such theory is incompatible with the underlying concept of the corporation as a legal person. The theory is rejected, and it is concluded that petitioner is a corporate entity separate and distinct from the private corporation known as the Regents of the University of California. It is also concluded that petitioner is not an agency of the State of California, or of the University of California.

Also, it is well settled that the income of a corporation is not the income of its stockholders, *per se. Eisner* v. *Macomber*, 252 U. S. 189. A stockholder is not entitled to the income of a corporation, or any part of it, until the income has been set apart for the benefit of the stockholders by proper corporate action. It is not material that all of the stock of a corporation is owned by one stockholder.

A clear understanding of the issue requires consideration of the nature of the entity of the University of California. The university is declared a public trust in article IX, section 9 of the Constitution of the State of California. It is a state institution of learning, formed for scientific, literary, or solely educational purposes. "The University, while a governmental institution, and an instrumentality of the state, is not clothed with the sovereignty of the state, and it is not the sovereign." *In Re Royer's Estate, supra.* The university

is not a corporation under the laws of the state. It is a unique entity, a governmental agency, created by the legislature, having such characteristics as to make it a public corporation or quasi-corporation. The Regents of the University of California is a private corporation, organized under the laws of the state, but it is a part of the university, and is not distinct from it. It appears to be an anomalous situation, but the courts of California regard the above as true under all the organic legislation, with the result that, by statute, there is apparently a corporation, the Regents of the University of California, within a public corporation, the university. The members of the board of regents of the university are not public officers, and they are not required to take any oath of office. The employment of a regent is deemed to be exclusively a private trust. *Lundy* v. *Delmas*, 104 Cal. 655; 38 Pac. 445. From the above it is clear that the University of California is not a political subdivision of the state, and it is not such within the intendment of section 116 (d). Petitioner's contention that the university is a political subdivision of the state must be rejected.

Section 116 (d) has been drafted, having in view a taxpayer which is subject to taxation under the Federal revenue acts and whose income is derived from a public utility. It is the established rule of law that a state, or a political subdivision of a state, or a governmental agency of a political subdivision is not within the taxing power of the Federal Government. So Congress could not have had in mind, in enacting section 116 (d), a taxpayer other than a person which is within the taxing power of the Federal Government. Petitioner is such person. Neither the State of California, nor the state university, nor the Regents of the University of California are a party to this proceeding. What separate rights the state, or the state university, may have, as distinguished from those of petitioner, are not before us.

Section 116 (d) clearly contains an express limitation that only income *accruing to* the state is exempt. The question is whether any income derived by petitioner from its business accrued to the State of California, in 1933 and 1934.

Having it in mind that the title to the stock of petitioner was held by the Regents of the University of California, nevertheless, it is to be regarded as part of the state university. *In Re Royer's Estate*, *supra*. The regents hold property and funds as a custodian for the state university. Whatever property the regents hold is the property of the state university, and, since it is a public trust, such property is the property of the State of California. So it has been held that a mortgage of land executed to the regents, to secure money due to that body for any purpose for which it was created, and the inter-

est which the regents thereby hold in the land, is the property of the state. *Webster* v. *Board of Regents of the University of California*, 163 Cal. 705; 126 Pac. 974. In this case, it must be concluded that the ownership of petitioner's stock by the regents is tantamount to ownership thereof by the State of California.

The next question is, whether any income of petitioner accrued to the State of California in 1933, and in 1934. According to the statement attached to the notice of deficiency, the adjusted net income of petitioner is $50,099.61 for the year 1933, and $55,605.36 for the year 1934. The facts show that in 1933 petitioner owed $400,000 on outstanding bonds. Also, that no dividends on capital stock were declared in 1933, and no income was set aside or credited to stockholders. The facts do not show what amount was available for stockholders in 1933. In *Citizens' Water Co.*, *supra*, at page 753, we stated, in construing section 116 (d) of the 1928 Act (which is the same as section 116 (d) of the 1932 and 1934 Acts), that "This paragraph was intended to exempt the city [or state] from taxation upon income which it actually receives from any public utility * * *." The petitioner in the *Citizens' Water Co.* case contended that a tax on its surplus earnings would directly affect its surplus earnings by reducing the surplus earnings which would be available to the city of Burlington, and, therefore, would amount to a tax upon the city. The Circuit Court of Appeals (Eighth Circuit) sustained this Board's conclusions and rejected the above contention. While the facts in that case differ from the facts here, the above question appears to be involved in petitioner's contentions. As was stated by the court in *Citizens' Water Co.* v. *Commissioner*, 87 Fed. (2d) 874, 878, it is clear that a tax on petitioner's earnings for the year 1933 will reduce, by the amount of the tax, the surplus available for stock dividends, if and when declared. But is that material? The petitioner's net earnings in 1933 did not belong to and become the property of the State of California in that year. The petitioner's net income in 1933 was its own income, and since no dividends were declared in 1933, none of petitioner's income accrued to the state in 1933. Accordingly, it is held that none of petitioner's income for 1933 is exempt from Federal income tax, under section 116 (d). Respondent's determination for 1933 is sustained. Cf. *Helvering* v. *Mountain Producers' Corporation*, 303 U. S. 376, where it is stated that "immunity from nondiscriminatory taxation sought by a private person for his property or gains * * * cannot be supported by merely theoretical conceptions of interference with the functions of government. Regard must be had to substance and direct effects." (Section 116 (d) was not involved in the above cited case.) See, also, *Curran* v. *Arkansas*, 15 How. 304, where the Court pointed out that a state, by owning all of

the capital stock of a private corporation, does not impart to that corporation any of its privileges or prerogatives, and, we may add, immunities. Cf., also, *Keifer & Keifer* v. *Reconstruction Finance Corporation,* 306 U. S. 381, deciding another question, but pointing out that government, itself, is not a conduit of its immunity to its agents or instrumentalities. Cf. *Allen* v. *Regents of University System of Georgia,* 304 U. S. 439.

In 1934 petitioner declared and paid $10,000 in dividends on its capital stock. In 1934, therefore, some of petitioner's income accrued to the State of California by virtue of its ownership, through the regents, of petitioner's capital stock. Section 116 (d) of the 1934 Act applies to this $10,000 of petitioner's income. On the basis of what has been concluded hereinbefore, petitioner is taxable on at least the remainder of its net income, $45,605.36, for the year 1934. *Citizens' Water Co., supra.*

There remains a question whether petitioner's income to the extent of $10,000 is exempt from tax in 1934, or whether petitioner is taxable on its total net income, and there shall be refunded to the State of California upon its duly filing a claim, "an amount which bears the same relation to the amount of the tax as the amount which (but for the imposition of the tax imposed by this title) would have accrued directly to * * * State, bears to the amount of the net income from the operation of such public utility for such taxable year."

The quotation above is from subsection (1) of section 116 (d), which follows immediately below the second paragraph of section 116 (d). There appears to be some ambiguity in the manner in which section 116 (d) has been drafted. Does the section mean that in some instances a taxpayer is to exclude part of its income from gross income, so as to make such part exempt from tax; or did Congress intend that the taxpayer should report its total net income for taxation, and that the State or political subdivision should obtain a refund? This question was considered by the Board in the *Citizens' Water Co.* case. In that case, dividends on preferred and common stock were declared and paid in the taxable years. The city of Burlington owned preferred and common stock of the utility corporation, and, presumably, it actually received the dividends paid on its stock. However, we held that the utility corporation must pay tax on its entire net income. The result was that the city of Burlington would, thereafter, if it saw fit, apply for a refund of the amount of income it lost as an imposition of the tax. See pages 754 and 755 of the *Citizens' Water Co.* case. The Board's interpretation of section 116 (d) was affirmed, and the court specifically approved the above construction of 116 (d).

It is concluded, that the petitioner is liable for the entire amount of the tax upon its total net income for the year 1934, under section 116 (d).[3] The respondent is sustained.

Reviewed by the Board.

*Decision will be entered for the respondent.*

VAN FOSSAN and OPPER concur only in the result.

---

[3] In the Finance Committee Report accompanying the revenue bill of 1928, Rept. No. 960, p. 19, the following is stated with reference to section 116 (d): "The section does not relieve the utility from tax. It merely refunds to the state or municipality the amount by which its income was reduced directly because of the tax." To the same effect, see Cumulative Bulletins, 1928, vol. VII–2, p. 147, I. T. 2436.