STATE *v.* DONAT F. COTE, *d/b/a* STANDARD CONSTRUCTION CO. *& a.*

*Ernest R. D'Amours*, Attorney General (by brief and orally), for the plaintiff.

*Hughes & Burns* and *Conrad Danais* (*Mr. Donald R. Bryant* orally), for the defendants.

PER CURIAM. Since the defendants reside or have their principal place of business in Hillsborough County, it is contended that this proceeding may not be brought in Merrimack County and should be abated. We may assume with counsel that the state is governed by the venue statute (R. L., c. 384, s. 1) which reads as follows: "1. TRANSITORY. Transitory actions, in which any one of the parties is an inhabitant of the state, shall be brought in the county where some one of them resides. If no one of the parties is an inhabitant of the state the action may be brought in any county." There are some early cases holding that a state cannot be considered an inhabitant of or residing in any county but there is common acceptance of the principle that the state is regarded as having its principal place of business in the county where its capitol is located. Merely because the state embraces all counties is no ground for saying that it resides in none. Such reasoning would relegate the state to the status of a non-resident corporation doing business within the state (*Blanchette* v. *Company*, 90 N. H. 207) and there is no persuasive reason to believe the Legislature so intended. The statute and the decisions make it clear that venue is based on what "justice or convenience requires" (R. L., c. 384, s. 3) and a technical interpretation is not favored. *McCauley* v. *Brooks*, 84 N. H. 207. In any case the statute permits a change of venue when required in the interests of justice. R. L., c. 384, s. 3. The motion to abate was therefore correctly denied and the proceedings were properly brought in Merrimack County where the capitol is located.

Objection is made that there is no evidence to support the finding of the Court that discovery and inspection was necessary in this proceeding. The Court was not required to take a view (R. L., c. 395, s. 21) but having done so the manner and extent of the view and inspection was largely discretionary. *State* v. *Langelier*, ante 97; *Carpenter* v. *Carpenter*, 78 N. H. 440. The general finding of the Court was one that could be made on the basis of the allegations of the bill in equity, the view and inspection and the arguments of counsel. *Vidal* v. *Errol*, 86 N. H. 585. The right to discovery and inspection is necessarily preliminary, remedial and discretionary and is favored as a method "to ascertain the truth by rational means" (*Taylor* v. *Thomas*, 77 N. H. 410, 411) in order that the case may be decided on the basis of pertinent evidence rather than the rules of evidence. R. L., c. 371, s. 1; *Lefebvre* v. *Somersworth Co.*, 93 N. H. 354. Since the inspection was necessary for the plaintiff to prepare its case (*Davis* v. *Company*, 79 N. H. 377) and was granted under the supervision and control of a master with authority to determine materiality of records inspected, there were proper safeguards of the rights of the defendants. *Ingram* v. *Railroad*, 89 N. H. 277.

"No subject shall . . . be compelled to accuse or furnish evidence against himself." N. H. Const., Bill of Rights, *Art.* 15th. Insofar as the inspection involves corporations, or corporate officers, neither the federal nor state constitutions confer any immunity. *Oklahoma Press Co.* v. *Walling*, 327 U. S. 186; *Ingram* v. *Railroad, supra.* While a learned authority once expressed a contrary view (8 Wig Ev., 3d *ed., s.* 2259b), the mistake was subsequently discovered and corrected. See 1947 Supp. to *s.* 2259b. Since the state charters corporations and has broad powers of supervision and regulation of their conduct and that of their corporate officers, the privilege against self-incrimination is no bar to a judicial examination of corporate books and records. 5 Fletcher, Corporations (Perm. *ed.*) *s.* 2209. The order in this case is analogous to the statutory right of a creditor to inspect corporate records (R. L., c. 274, *ss.* 91-93) relating to its claim (35 A. L. R. 752), and the court may in such cases prevent "other improper use of the information to be obtained." *s.* 94. *Hub Construction Co.* v. *Breeders' Club*, 74 N. H. 282.

The privilege against self-incrimination is strictly a personal one applicable to an individual holding his private records in a purely personal capacity. It does not apply to organizations or companies, incorporated or unincorporated whose character is essentially impersonal rather than purely private and personal. Such reasoning

was applied in *United States* v. *White*, 322 U. S. 694, 698-701, where an officer of an unincorporated labor union was denied the right to refuse the production of union books on the ground they might tend to incriminate the union, or himself as an officer thereof and individually. "Were the cloak of the privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible." *Id.*, 700. The exact relationship of defendants to each other does not appear in the record but the records of the corporation, Standard Construction Co. Inc. "and its associated companies" are "inter-related" and in some cases kept in the same "cash book." If records of Cote are similarly in the possession of the defendant corporations, the privilege may not be claimed by them in his behalf. If his records are so commingled with theirs that they cannot be distinguished, then inspection cannot be prevented by a claim of privilege. Such records are primarily corporate, impersonal and organizational rather than purely private and personal. The privilege is not to be used as a means of preventing the orderly investigation of civil matters. *Boston & Maine R. R.* v. *State*, 75 N. H. 513.

The record does not disclose that the permitted inspection will involve documents or records in the possession of the defendant Cote which are his private records. Our constitution seeks primarily to protect individual civil liberties and *Art.* 15th is not intended "to protect economic or other interests of such organizations so as to nullify appropriate governmental regulations." *United States* v. *White, supra.* If the defendant Cote chose to do business under a myriad of interlocking trade-names and corporations and kept the records so combined and inter-related that they cannot be distinguished, he cannot complain because they are treated as basically impersonal and corporate rather than personal and private.

*Defendants' exceptions overruled.*