## DiFabio Birth Record

*Don F. D'Agui*, for petitioners.

KLEIN, P. J., March 7, 1957.—A petition has been filed by the parents of Charles Daniel DiFabio, a minor, 18 years of age, born in the City of Philadelphia, to amend and correct his birth registration. The petitioning parents, as well as the minor, now reside in the State of New Jersey.

The matter was referred to William E. Schubert, Jr., Esq., the court's standing master in matters pertaining to birth records. A comprehensive report was filed by him, after a full hearing, in which he recommends that the requested amendment be authorized. The master's report is routine as to the substantive matters requiring amendment, but raises an important question as to whether this court has jurisdiction in view of petitioners' nonresidence in Pennsylvania.

The learned master, in his scholarly report, reached the conclusion that this court does possess the necessary jurisdiction. We agree with his conclusions.

The Orphans' Court Act of August 10, 1951, P. L. 1163, in designating the jurisdiction of the orphans' court, provides:

"Section 301. Exclusive Jurisdiction. — The orphans' court shall have exclusive jurisdiction of: . . . (15) Birth Records. Matters relating to birth records, as provided by law."

The vague language of this statute caused considerable confusion. The late Judge Mawhinney, in a carefully considered and scholarly opinion (In re Halohan Petition, 80 D. & C. 582 (1952)), reviewed the law concerning amendment of birth registrations and decided that the common pleas courts lacked jurisdiction to entertain petitions to amend such registrations. He concluded, further, that by virtue of the provisions of the Act of July 16, 1941, P. L. 405, as amended by the Act of May 21, 1943, P. L. 377, sec. 1, 35 PS §496, such jurisdiction was vested exclusively in the orphans' court for persons born prior to June 1, 1906. At the same time, he expressed great doubt as to the jurisdiction of the orphans' court in cases involving persons born after that date. He added, at page 588:

"None of the statutes presently in force confers any right to appeal a refusal of registration or amendment from the Bureau of Vital Statistics to this court. Assuming that the orphans' court does not have jurisdiction in this matter, then no relief is available to petitioners *in this county*. The only recourse petitioners could have, *if any*, would be to appeal under the provisions of the Administrative Agency Law of June 4, 1945, P. L. 1388, which specifically limits such appeal to the Court of Common Pleas of Dauphin County; . . . "

The writer of the present opinion, in an article entitled "Some Suggested Legislative Changes"* discussed this anomalous situation. He said:

"The matter of issuing and correcting birth certificates can be a matter of tremendous importance in these troubled cold-war days. A birth certificate is positive evidence of citizenship. The courts must be ever vigilant to make certain that subversive agents do not fraudulently obtain a birth certificate as a short

---

* Pennsylvania Bar Association Quarterly, October, 1952, page 21.

cut to naturalization. Furthermore, a post-bellum period always brings with it a considerable number of proceedings to legitimatize children born out of wedlock. Many unwed mothers give false information to cover up their identity. The Bureau of Vital Statistics, apparently acting on advice furnished by the Attorney General's Office, has taken the position that it has no fact-finding authority and insists upon the parties obtaining a court order before it will amend or correct a birth record. Yet it appears that the Legislature has failed to vest this authority specifically in any court.

"Our laws with respect to birth certificates should receive the same kind of over-hauling that Judge Ladner has recommended for our marriage laws."

In an effort to relieve this unhappy situation, the legislature, on August 4, 1955 (P. L. 302), amended section 301 of the Orphans' Court Act of 1951, in the following manner:

"(15) Birth Records. [Matters relating to birth records, as provided by law.] All proceedings which may be necessary to be presented to a court for determination with regard to issues concerning recordation of birth and birth records or the alteration, amendment or modification of such birth records or the right to obtain a certified copy of the same. Whenever a person is entitled to take an appeal from the action of the Department of Health in connection with any matters concerning birth records the appeal shall be taken to the orphans' court of the county in which the person is a resident. In all other matters in which a petition is addressed to a court in connection with matters of birth records, the filing of which petition is not in the nature of an appeal but is an original proceeding, shall be filed and determined by the orphans' court of the county in which the petitioner resides." (Material in brackets eliminated by the amendment.)

It is unfortunate that the legislature has treated this important matter in such a cavalier fashion. Although this piecemeal legislation has cleared up many of the problems of jurisdiction, it has in some respects added to the confusion.

The Statutory Construction Act of May 28, 1937, P. L. 1019, article IV, sec. 51, provides:

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; . . . "

What is the mischief which the legislature intended to correct by enacting this statute? The answer is obvious. To correct the uncertainty with respect to the jurisdiction of the several courts of the Commonwealth to entertain petitions to amend faulty birth registration of all *persons born in the State of Pennsylvania.* Nothing is found in the statute which suggests that this relief was intended to benefit only those persons who continue to reside within the borders of our State.

We are in full accord with the following statement made by Mr. Schubert, the master, in his report, at page 4, concerning the 1955 amendment:

"It seems clear from a reading of this wording that it was the intent of the legislature to place the entire responsibility for birth records in this Commonwealth within the control of the Orphans' Court. Though subsequent language of the amendment directs that the forum to be used is the county of residence of a petitioner, the initial grant of jurisdiction is all-inclusive.

The later language can only be construed as intended to impose a venue rule in order to prevent residents of the Commonwealth from shopping for a favorable forum among the many counties.

"That this is a reasonable and logical interpretation becomes even more apparent, when we consider the Act of July 16, 1941, P. L. 405, as amended by the Act of May 21, 1943, P. L. 377, which provides those born before 1906 with the privilege of instituting action in the county of birth and makes no requirement of residence. What is particularly important to note in this connection is that proceedings brought under the earlier Act generally are for the creation of a record where none at all previously existed, whereas, petitions brought under the recent amendment to the Orphans' Court Act are usually merely for the correction of some error in an existing record. Surely, the legislature did not mean to impose stricter requirements on those petitioning for this lesser right."

A distinction must be drawn between a statute involving the basic question of jurisdiction and a statute fixing the venue of a personal action within a State, where the jurisdiction of the State is not doubtful: Beale, The Conflict of Laws, vol. 1, p. 115. "Where the legislature has enacted a scheme of venue in civil cases, it should be so construed, if possible, as to cover all situations which may arise, and technical interpretation of a venue statute is not favored": 92 C. J. S. Venue §5, p. 673. Venue is based on what justice or convenience requires. See State v. Cote, 95 N. H. 108, 58 A. 2d 749 (1948). The statute before us for study is remedial in nature and should be construed in such a manner that the persons intended to be benefited should not be unjustly deprived of their rights or be unnecessarliy subjected to great inconvenience and hardship. See 56 Am. Jur. 30, §28.

It would be preposterous to argue that the Commonwealth of Pennsylvania is interested in the birth records of persons born within the State, only so long as they remain residents of the State. Pennsylvania is but a part of the great family of States which form the United States of America. The maintenance and preservation of an accurate system of recording births, deaths, marriages, divorces, etc., in each of the States is of vital importance to all of the citizens of the entire nation. Since it is crystal clear that only the duly appointed authorities of Pennsylvania can correct or amend the birth records of persons born in this State, nonresidents born in Pennsylvania might be completely without remedy or be subjected to unnecessary hardship and expense if nonresidents were deprived of relief under the provisions of the statute. We cannot believe that the legislature intended such an anomalous result.

We must, therefore, conclude that the statute must be construed to mean that if a person is a resident of the State of Pennsylvania, all proceedings "concerning recordation of birth and birth records or the right to obtain a certified copy of the same" must be instituted in the county in which such person resides. If, however, the person whose birth record is in question is not a resident of the State of Pennsylvania, the proceeding may be commenced in the county in which he was born.

Reading this statute in this manner seems to us to carry out the intention of the legislature to create an integrated method of making relief available in all cases dealing with the recordation of births of persons born within this Commonwealth.

We will, accordingly, enter the decree in the form recommended by the master.