[L.A. No. 29731. In Bank. Nov. 12, 1970.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KENNETH L. KARST et al., Real Parties in Interest.

**530**

532

## COUNSEL

Thomas J. Cunningham, Donald L. Reidhaar, Warren S. Levin and William H. McKenzie for Petitioner.

No appearance for Respondent.

Charles H. Phillips, Richard H. Borow, Steven L. Sloca, Margolis, McTernan, Smith, Scope & Herring, Margolis & McTernan, John T. McTernan and Barry Nakell for Real Parties in Interest.

## OPINION

**TOBRINER, J.**—Petitioner, the Regents of the University of California, seeks a writ of mandate pursuant to Code of Civil Procedure section 400[1] to command the Superior Court of Los Angeles County to transfer an action to the Superior Court of Alameda County and to vacate a summary judgment entered after the denial of petitioner's motion to change venue but before the filing of this petition for a writ of mandate. We shall set forth our reasons for concluding that the venue for the action properly

---

[1]Section 400 provides in part: "When an order is made by the superior court granting or denying a motion to change the place of trial, the party aggrieved by such order may, within 10 days after service of a written notice of the order, or within such additional time not exceeding 20 days as the court may within the original 10 days allow, petition the court of appeal for the district in which the court granting or denying the motion is situated for a writ of mandate requiring trial of the case in the proper court."

▬▬▬▬▬

lies in Los Angeles County. We do not reach the merits of the summary judgment since the present action, initiated pursuant to Code of Civil Procedure section 400, involves only the question of venue.

On October 3, 1969, real parties in interest Karst, Kaplan, Glasgow, Moore, and Deutsch (hereinafter referred to as plaintiffs) filed a taxpayers' action in the Superior Court of Los Angeles County against the Regents of the University of California. The first cause of action seeks a judgment declaring that certain resolutions adopted by the Regents in the 1940's, in the 1950's, and in September 1969, violate the First and Fourteenth Amendments to the United States Constitution and that the expenditure of public tax monies in the furtherance of these resolutions transgresses constitutional protections. The second cause of action seeks a permanent injunction restraining the Board of Regents, and all of its agents, servants, and employees, from expending public funds in the implementation of these resolutions. Prohibiting the hiring by the university of members of the Communist Party, the resolutions direct that steps be taken to terminate the employment of Angela Y. Davis, an assistant professor at the university's Los Angeles campus, by reason of such membership.

On October 7, 1969, plaintiffs filed a notice of a motion for summary judgment to be heard on October 20, 1969. (Code Civ. Proc., § 437c.) On October 9, 1969, pursuant to leave of court, Miss Davis (hereinafter referred to as intervenor) filed a complaint in intervention. Her complaint incorporates most of the factual allegations of the taxpayers' first cause of action. It further alleges that the resolutions adopted by the Regents as well as the proceedings to terminate her employment violate the First and Fourteenth Amendments to the United States Constitution and article I, sections 9, 10, and 13 of the California Constitution. The intervenor asks that the court grant the relief requested by plaintiffs, enjoin the termination of her employment by reason of her membership in the Communist Party, and order the restoration of her status as assistant professor of philosophy at the Los Angeles campus.

On October 10, 1969, the Regents filed a notice of a motion for change of venue, seeking to transfer the cause to the Superior Court of Alameda County on the grounds that the action is transitory and that the Regents of the University of California, a corporation, legally resides in Alameda County. The Regents also filed a general demurrer as to each of the taxpayers' causes of action.

In accordance with the above notices, the court, on October 20, 1969, heard all of such matters. The court denied petitioner's request for a change of venue and overruled its demurrer; the court granted plaintiffs' motion

for summary judgment, but took the intervenor's claims under submission. Pursuant to Code of Civil Procedure section 400, petitioner petitioned the Court of Appeal, Second Appellate District, Division Three, for a writ of mandate. The Court of Appeal determined that a peremptory writ of mandate should issue, instructing the trial court to vacate and set aside its order granting plaintiffs' motion for summary judgment and to transfer the action to Alameda County. Thereafter we granted plaintiffs' petition for a hearing in this court.

■ Although the Constitution designates petitioner as a corporation, the rules of venue generally applicable to proceedings against state agencies govern actions against the Regents. Charged with almost exclusive responsibility for administering the university,[2] the Board of Regents has been variously characterized as an institution of the state, a public corporation, a governmental agency, and a public entity. (*Ishimatsu* v. *Regents of University of California* (1968) 266 Cal.App.2d 854, 863-864 [72 Cal. Rptr. 756]; Gov. Code, § § 811.2, 7260.) ■ Accordingly, rules of venue governing actions against private corporations (Cal. Const., art. XII, § 16) do not cover the Regents. (See *Yedor* v. *Ocean Acc. & Guar. Corp.* (1948) 85 Cal.App.2d 698, 700-703 [194 P.2d 95]; *De Campos* v. *State Comp. Ins. Fund* (1946) 75 Cal.App.2d 13, 16-19 [170 P.2d 60].)

Unless otherwise designated by statute, the provisions for venue that pertain to other civil actions apply to actions against state agencies and public entities. (*Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1961) 197 Cal.App.2d 759, 765 [18 Cal.Rptr. 151].) Section 395 of the Code of Civil Procedure provides: "In all other cases, except as in this section otherwise provided, and subject to the power of the court to transfer actions or proceedings as provided in this title, the county in which the defendants, or some of them, reside at the commencement of the action, is the proper county for the trial of the action."

Several sections of the codes covering actions against state agencies, officers, or public entities, however, operate to override the provision for trial in the county of the defendant's residence. In a few instances these code sections fix by law the venue for actions against some designated agencies. For example, suits against the Board of Medical Examiners must be tried either in Los Angeles, Sacramento, or San Francisco. (Bus. &

---

[2]The California Constitution, article IX, section 9, provides in part: "The University of California shall constitute a public trust, to be administered by the existing corporation known as 'the Regents of the University of California,' with full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance with the terms of the endowments of the university and the security of its funds."

Prof. Code, § 2109; *McPheeters* v. *Board of Medical Examiners* (1946) 74 Cal.App.2d 46, 49 [168 P.2d 65].)[3] As in the case of all defendants, an action against the state based on an injury to a person or personal property or for wrongful death may be tried in the county where the alleged injury occurred. (Code Civ. Proc., § 395.) Similarly, an action based on a contract between the state and the plaintiff may be brought in the county where the contract was entered into, or the county where it was to be performed. (Code Civ. Proc., § 395.)

Other important exceptions to the general rule expressed in section 395 are sections 401 and 393 of the Code of Civil Procedure. Section 401 provides that whenever an action against the state or its agencies can be commenced in, or removed to, Sacramento County, the action may be tried in any city where the Attorney General has an office.[4] Section 401 applies, therefore, when a statute requires that the venue be in Sacramento County;[5] when the normal rules of venue allow trial there, as when the "residence" of the agency is in Sacramento;[6] or when the case involves an act of a public officer that occurred there (Code Civ. Proc., § 393).

Section 393 is the remaining major exception to the general rules of venue. Subdivision (1) (b) of that section provides in part: "Subject to the power of the court to transfer actions and proceedings as provided in this title, the county in which the cause, or some part thereof, arose, is the proper county for the trial of the following actions: . . . Against a public officer or person especially appointed to execute his duties, for an act done by him in virtue of his office; or against a person who, by his command or in his aid, does anything touching the duties of such officer."[7]

---

[3]Similar rules for venue are applicable to actions against the Board of Nurse Examiners (Bus. & Prof. Code, § 2714), the Board of Osteopathic Examiners (Bus. & Prof. Code, Osteopathic Act, § 1 [Stats. 1923, p. xxv]), and the Board of Chiropractic Examiners (Bus. & Prof. Code, Chiropractic Act, § 6 [Stats. 1923, p. xxii]).

[4]Subdivision (1) of section 401 provides: "Whenever it is provided by any law of this State that an action or proceeding against the State or a department, institution, board, commission, bureau, officer or other agency thereof shall or may be commenced in, tried in, or removed to the County of Sacramento, the same may be commenced and tried in any city or city and county of this State in which the Attorney General has an office." Thus actions which fall within the provisions of section 401 may be commenced in Sacramento, San Francisco, Los Angeles, and San Diego.

[5]See footnote 3, *supra*.

[6]The official residence of many state agencies and officers is fixed by law in Sacramento. (See, e.g., Gov. Code, §§ 1060, 11151.) Even if not established by statute, the residence of some statewide agencies and officers is assumed to be Sacramento. (See, e.g., *Brock* v. *Superior Court* (1947) 29 Cal.2d 629, 630 [177 P.2d 273, 170 A.L.R. 521] (State Director of Agriculture).)

[7]The use of the masculine gender in the section does not prevent its application to the Board of Regents, a corporation. Code of Civil Procedure section 17 provides

No statute expressly designates the venue for actions against the Board of Regents. ■ Since plaintiffs' action does not rest on contract[8] or personal injury, and since it cannot be removed to Sacramento County, neither the tort nor contract provisions of section 395, nor the provisions of section 401, apply. The parties do not question the fact that the residence of petitioner is in Alameda County, the place of its principal administrative office. Accordingly, unless section 393 permits the trial of the cause in Los Angeles County, petitioner may properly demand, pursuant to section 395, the transfer of the action to Alameda County. Only if, for the purposes of venue, petitioner is a "public officer" within the meaning of section 393 and if all or part of the taxpayers' action arose in that county may the action be tried in Los Angeles County.

1. *The corporation known as the Regents of the University of California is a "public officer" within the meaning of Code of Civil Procedure section 393.*

■ The underlying purpose of statutory provisions as to venue for actions against state agencies is to afford to the citizen a form that is not so distant and remote that access to it is impractical and expensive. To that end, such provisions should be liberally construed in favor of the private litigant.[9] ■ As the court stated in *Harris* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 197 Cal.App.2d 759, 763: "It is the duty of the

---

in relevant part that, "Words used in this code . . . in the masculine gender include the feminine and neuter; . . . the word 'person' includes a corporation as well as a natural person. . . ."

[8] That the intervenor's complaint in intervention rests, in part, on her contract of employment with the university does not affect the determination of the venue of the principal action. A complaint in intervention does not change the nature of the original suit. (See *Boskowitz* v. *Thompson* (1904) 144 Cal. 724, 728-729 [78 P. 290].) If a suit may be removed to the residence of the defendant on one cause of action, it may be removed there as to all alleged causes of action. (*Archer* v. *Superior Court* (1962) 202 Cal.App.2d 417, 419 [21 Cal.Rptr. 48].) Merely because Miss Davis might have filed a separate suit against the Regents does not endow her with an independent right to assert a claim for venue in Los Angeles County. Since the intervenor has chosen to join the taxpayers' action, any decision as to the venue for the taxpayers' action will also apply to the intervenor.

[9] Various courts have expressed the thought that venue statutes should be liberally construed. Thus in *Carrier* v. *Neal* (1940) 34 Ohio L. Abs. 32 [22 Ohio Ops. 6, 35 N.E.2d 870, 871], the court said that a venue statute "should be liberally construed to effect the purpose for which it was enacted." Likewise in *State* v. *Cote* (1948) 95 N.H. 108 [58 A.2d 749, 751], the Supreme Court of New Hampshire said: "[T]he decisions make it clear that venue is based on what 'justice or convenience requires' . . . and a technical interpretation is not favored." The rule is summarized in Comment (1949) 37 Cal.L.Rev. 102, 113: "Those seeking relief against agencies require more protection of their interest in the place of trial than that found in the discretion of the trial judge to change the venue when the convenience of witnesses and the ends of justice would thereby be promoted."

courts within the framework of the statutes passed by the Legislature, to interpret the statutes so as to make them workable and reasonable."[10] In recommending the enactment of Code of Civil Procedure section 401, the California State Bar Committee on Administration of Justice noted: "Frequently it is a severe financial hardship to require litigants to have their cases tried at Sacramento. Certainly as between the State and the individual, the State should and can afford any added expense involved." (Committee on Admin. of Justice, 1945-46, Annual Report (1946) 21 State Bar J., pp. 161, 180.) The reasons compelling the enactment of section 401 are equally compelling as to the construction to be given section 393.

██ In the light of the policy favoring a practical and functional application of the venue statutes, we believe that "public officer" as used in section 393 applies to the Board of Regents. ██ In an action against a state agency, department, institution, board, or other public entity, founded upon its official action, such entity, in the absence of a statutory designation of an administrative or enforcement officer, is itself a "public officer." Even if the individual members of the agency are not "public officers," section 393 designates the agency as such an officer if its members

---

[10]We have cited *Harris* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 197 Cal.App.2d 759, because we believe the underlying approach of that case supports our position. We recognize, however, that the factual situation and the ruling of that case entirely differ from those of the instant one. *Harris* involved an appeal to the Alcoholic Beverage Controls Appeals Board from the department's rejection of an application for an on-sale beer license. The department filed a petition for a writ of prohibition against the appeals board in the Superior Court of the City and County of San Francisco. The appellate court denied the appeals board's petition to change the venue to the County of Sacramento, holding that section 401, rather than section 393, of the Code of Civil Procedure applied to an action against the appeals board.

Section 393 applies only to actions involving "affirmative acts which directly interfere with the personal rights or property of the person complaining, *to acts done as distinguished from acts threatened.*" (Italics added.) (*Harris* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 197 Cal.App.2d 759, 768.) Since the action brought by plaintiff in *Harris* was one for a writ of prohibition or, in the alternative, for a writ of mandate, the court held that section 393 did not apply. It is clear that the decision in *Harris* turned on the nature of the cause of action, not on whether the defendant was or was not a "public officer" within the meaning of section 393.

The court in *Harris* cites *Cecil* v. *Superior Court* (1943) 59 Cal.App.2d 793 [140 P.2d 125], and *Bonestell, Richardson & Co.* v. *Curry* (1908) 153 Cal. 418 [95 P. 887]. *Cecil* distinguishes *Bonestell* on the ground that there the action was "*solely* to prevent the doing of certain acts by such officials and by the other defendants in the future." (Italics in original.) (59 Cal.App.2d at p. 797.) *Cecil* points out that in the situation before it "Arden's license has been revoked, although conditionally. If the order is annulled, that will end the matter." (*Id.*) In the instant case the gist of the action is to declare invalid the resolutions of the Board of Regents, and if that is done "that will end the matter." Hence the instant case falls within the type of situation described in *Cecil,* rather than that in *Bonestell* and *Harris.*

██

collectively constitute an entity and if no person has been designated by statute as an administrative or enforcement officer of the agency.

Most state agencies function through an administrative or enforcement officer who is charged with the duty of implementing the agency's policies.[11] The Director of Agriculture, for example, serves as the chief executive of the Department of Agriculture. (Agr. Code, § 102.) The responsibility rests with him to adopt and enforce such regulations as may be necessary to execute the provisions of the Agricultural Code. (Agr. Code, § 407.) Accordingly, plaintiff appropriately designated the Director of Agriculture as defendant in an action for restoration of its revoked milk distributor's license. (*Cecil* v. *Superior Court, supra,* 59 Cal.App.2d 793, 794-795.) "The Director of Agriculture has gone into the county of Los Angeles, has inquired into alleged violations of the law by [plaintiff], and has issued an order which will put an end to [plaintiff's] business as a distributor of milk by revoking its license. . . ." (59 Cal.App.2d at p. 796.) Similarly, plaintiffs properly named the Registrar of Contractors as defendant in a mandamus proceeding seeking review of his order revoking plaintiffs' contracting licenses. (*Duval* v. *Contractors State License Board* (1954) 125 Cal. App.2d 532 [271 P.2d 194].)

In both *Duval* and *Cecil* the court applied section 393, and their logic applies here. "There is no escape from the conclusion that where a citizen is singled out by a state agency and proceedings are instituted against him and result in an order, the effect of which is to deprive him absolutely or conditionally of the right to do business, the proper county for redress under section 393, subd. (b), of the Code of Civil Procedure is the county in which he carries on the business and in which he will be hurt by enforcement of the order." (*Cecil* v. *Superior Court, supra,* 59 Cal.App.2d 793, 799.)

We see no justification for a different rule in a case such as the present one, in which a public agency commits the official act that causes the alleged injury and the case in which the administrative officer performs the official

[11]We list some, but by no means all, of the state agencies that operate by means of an administrative or enforcement officer: Department of Aeronautics (Pub. Util. Code, §§ 21202, 21252), Department of Alcoholic Beverage Control (Bus. & Prof. Code, § 23050), Department of Commerce (Gov. Code, §§ 14981, 14985), Department of Conservation (Pub. Resources Code, § 601), Department of Corrections (Pen. Code, § 5053), Department of Fish and Game (Fish & G. Code, §§ 701, 704), Department of Industrial Relations (Lab. Code, §§ 51, 54-55), Department of Mental Hygiene (Welf. & Inst. Code, § 4004), Department of Motor Vehicles (Veh. Code, §§ 1504, 1650-1651), Department of Public Health (Health & Saf. Code, § 106), Department of Public Works (Gov. Code, §§ 14001, 14004), Department of Social Welfare (Welf. & Inst. Code, §§ 10552-10554), Department of Water Resources (Wat. Code, § 120).

act that inflicts the damage. The shaft that strikes is not changed because it is wielded by the public body functioning directly rather than by the public body functioning through a designated officer. No basis in logic or practicality supports a different rule of venue for public agencies based upon the method of their execution of their orders: whether by their own direct, or by their implemented, action.

Furthermore, in common understanding and usage the Board of Regents is more than an assortment of scattered individual members; it is, indeed, as it is statutorily defined, a corporation or board: an entity. Other statutes refer to the Board of Regents as an entity.[12] ▇ That entity is itself, in the absence of a designated administrator, an "officer." Accordingly, several courts have held similar public boards to be public officers. In an action challenging the constitutionality of a price agreement order by the New Mexico State Board of Barber Examiners, the New Mexico Supreme Court held: "The Board . . . has been clothed by the legislature with powers and duties of statewide scope, the exercise of which involve some portion of the governmental power. Hence *the Board itself,* as well as its component members, *is a state officer.* . . ." (Italics added.) (*Tudesque* v. *New Mexico State Board of Barber Examiners* (1958) 65 N.M. 42 [331 P.2d 1104, 1106].)

---

[12]See, e.g., Government Code section 811.2 ("public entity," for purposes of tort liability, defined to include "the State, the Regents of the University of California, a county, city, district . . . ); Government Code section 7260 (public entity for purposes of authority to grant relocation assistance); Code of Civil Procedure section 416.50 (for purposes of service of process); Probate Code section 707.5 (probate claims); *Newmarker* v. *Regents of Univ. of Cal.* (1958) 160 Cal.App.2d 640, 645 [325 P.2d 558] ("a public legal entity charged with the government of a public trust"). It is also clear that the individual members of the Board of Regents are not public officers. (*Caminetti* v. *Pacific Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 360 [139 P.2d 908].) Thus, liability for wrongful acts lies with the corporation called the Regents of the University of California, not with its individual members. (*Lundy* v. *Delmas* (1894) 104 Cal. 655, 659-660 [38 P. 445].)

Although petitioner contends that the designation of the board in the above statutes as a "public entity" precludes its characterization as a "public officer," we have explained that an entity may well be an officer. In any event, even if we thought the meaning of the terms conflicted, we know of no reason why the Regents could not be considered a "public entity" as to some matters and as a "public officer" for the purposes of venue. The meanings of the terms can take on significance only with respect to the purpose for which the characterization is sought, and here, as we have explained, the purpose of the venue statute functionally leads to the designation of the Regents as a "public officer" within the meaning of section 393.

We ascribe no significance to the fact that the Board of Regents is not listed among those persons designated in Government Code section 1001 as "civil executive officers." Since that section was enacted as part of a general statutory scheme to distinguish between civil and military executive officers (Gov. Code, § 1000), it has no bearing on whether a particular person or entity is a "public officer" for the purposes of venue.

Similarly, in an action against a municipal government for personal injury, the Supreme Court of North Carolina noted: "The defendant is a municipal corporation public in its nature. It is an artificial person created and recognized by the law, invested with important corporate powers, public, and in a sense official, in their nature, and charged with public duties which it executes by and through its officers and agents. We therefore think that actions against it fairly come within the meaning of and are embraced by the statutory provision" governing the venue for actions against public officers.[13] (*Jones* v. *Town of Statesville* (1887) 97 N.C. 86 [2 S.E. 346, 347]; *Godfrey* v. *Tidewater Power Co.* (1944) 224 N.C. 657 [32 S.E.2d 27, 29] (municipality); *State* ex rel. *State Board of Education* v. *District Court of Bryan County* (Okla. 1955) 290 P.2d 413, 416 (school board); *Bank of Chatsworth* v. *Hagedorn Constr. Co.* (1923) 156 Ga. 348 [119 S.E. 28, 33] (bank substituted for county treasurer); *Brevard Light & Power Co.* v. *Board of Light & Water Comrs. of Concord* (1909) 151 N.C. 558 [66 S.E. 569, 569-570] (public regulatory agency); *City of Pocatello* v. *Fargo* (1924) 41 Idaho 432 [242 P. 297, 301] (bank as public depositary); *Board of Water Engineers* v. *Briscoe* (Tex.Civ.App. 1930) 35 S.W.2d 804, 809 (state board held to be a "head of a department of state government"); see also *Board of Conference Claimants* v. *Phillips* (1933) 187 Ark. 1113 [63 S.W.2d 988, 990] (board of education); contra, *State* ex rel. *Kleinsorge* v. *Reid* (1960) 221 Ore. 558 [352 P.2d 466, 472].)

■ The corporation known as the Board of Regents constitutes the highest administrative authority of the University of California. "The Regents have the general rule-making or policy-making power in regard to the University . . . and are . . . fully empowered with respect to the organization and government of the University. . . ." (*Goldberg* v. *Regents of University of California* (1967) 248 Cal.App.2d 867, 874 [57 Cal.Rptr. 563]; *Newmarker* v. *Regents of Univ. of Cal., supra,* 160 Cal.App.2d 640, 645.) "[T]he power of the Regents to operate, control, and administer the University is virtually exclusive." (30 Ops.Cal.Atty.Gen. 162, 166; Cal. Const., art. IX, § 9.)[14] ■ The Board of Regents acted in its supreme

---

[13]Code of North Carolina, section 1-77 (formerly § 191), requires that actions be tried in the county where all or part of the cause of action arose if the action is "[a]gainst a public officer or person especially appointed to execute his duties, for an act done by him by virtue of his office; or against a person who by his command or in his aid does anything touching the duties of such officer."

[14]Plaintiffs' action in the present case is to be distinguished from one directed against a government organization which, as an entity, lacks administrative or regulatory power. Our construction of section 393, therefore, does not conflict with our decision in *County of Riverside* v. *Superior Court* (1968) 69 Cal.2d 828 [73 Cal.Rptr. 386, 447 P.2d 626]. In that case plaintiff brought an action against the County of

administrative capacity in 1940 and again in 1949 and 1950 when it adopted and affirmed resolutions barring members of the Communist Party from university positions. It also acted in such capacity when, on September 19, 1969, it adopted a resolution ordering the president of the university to terminate the employment of Angela Davis because of her membership in the Communist Party.

Quite properly, therefore, plaintiff taxpayers and Miss Davis named as defendant the Regents of the University of California. The authority to establish and enforce all regulations and policies of the university lies with the board. An individual citizen or a number of individual taxpayers should bear no greater burden in challenging the acts of the Regents than in challenging the acts of any other chief executive of a government agency.

The huge operations of the University of California, involving the annual expenditure of hundreds of millions of dollars, vitally affect the lives of thousands of students and teachers. In similar manner the rules and regulations of public agencies, annually promulgated in great variety, crucially touch the affairs of millions of citizens. The activities of all of these state institutions inevitably engender litigable issues. *Cecil* and *Duval* effectuate the legislative policy of affording to those adversely affected by the rulings of these agencies a forum for the resolution of such disputes that is as convenient and inexpensive as possible. We know of no precedent or statute that compels the abandonment of this salutary approach. ■ We conclude, therefore, that the corporation known as the Regents of the University of California is a "public officer" within the meaning of section 393 of the Code of Civil Procedure.

Riverside and several of that county's officers, challenging the constitutionality of a county ordinance that regulated the use of display advertising signs. Subsequently the plaintiff filed a written dismissal of the action as to the individual officers. The court properly noted that upon the removal of the individual officers, section 393 no longer applied. (*County of Riverside* v. *Superior Court, supra,* 69 Cal.2d at p. 830, fn. 4.)

Although a county may be sued as an entity, it does not occupy a position analogous to that held by the chief administrative officer of a governmental agency. The county itself is a political subdivision whose administrative and regulatory powers vest exclusively in individual officers or county agencies. If in challenging a county ordinance, a plaintiff chooses to sue the county rather than the individual public officer or agency holding the administrative power of the county, the county is entitled to be sued in its residence pursuant to Code of Civil Procedure section 395. A similar result would obtain if a citizen sued both the Director of Agriculture and the Department of Agriculture, and then dismissed the action as to the director. Section 393 would no longer apply since the Department of Agriculture, like a county, exercises no administrative authority as an entity, but acts, and thus must be sued through, its chief administrative officer. In the present case, the Board of Regents itself is the highest administrative and regulatory officer in the University of California; thus it is subject to the provisions of section 393.

2. *All or part of the taxpayers' action arose in Los Angeles County.*

We can entertain no serious doubt that all or part of plaintiffs' cause of action arose in Los Angeles County. The suit is a taxpayers' action challenging the expenditure of public funds to enforce certain resolutions adopted by the Regents. Petitioner's resolution of September 19, 1969, directed the president of the university "to take steps to terminate Miss Davis' University appointment in accordance with regular procedures as prescribed in the Standing Orders of The Regents." Acting pursuant to petitioner's directive, the president notified Miss Davis that her employment would be terminated, but that "the termination of the appointment of a member of the faculty before the expiration of his contract shall be only for good cause after the opportunity for a hearing before the properly constituted advisory committee of the Academic Senate. In [Miss Davis'] case, the appropriate committee would be the Privilege and Tenure Committee of the Los Angeles Division of the Academic Senate." The Privilege and Tenure Committee of the Los Angeles Division of the Academic Senate did convene and Miss Davis appeared before it; moreover, employees of petitioner at the Los Angeles campus arranged for, and executed, the administrative steps necessarily involved in these proceedings. We conclude, therefore, that public funds were expended in Los Angeles County where Miss Davis is employed by the university.

The county where the resolutions were adopted does not control the issue of venue but the county in which the alleged injury occurs. "It is where the shaft strikes, not where it is drawn, that counts." (*Cecil* v. *Superior Court, supra,* 59 Cal.App.2d 793, 799.) Accordingly, since public monies were spent in Los Angeles County, it is in that county where the taxpayers suffered the alleged injury.

Petitioner's argument that our construction of section 393 will expose it to taxpayers' suits in any county in this state misinterprets the underlying nature of a taxpayers' action. Such an action rests not upon the payment of taxes by the taxpayer, but upon the alleged illegal expenditure of such monies by the defending public entity. (See *Hallinan* v. *Mellon* (1963) 218 Cal.App.2d 342, 346 [32 Cal.Rptr. 446]; *Ahlgren* v. *Carr* (1962) 209 Cal.App.2d 248, 254 [25 Cal.Rptr. 887]; Code Civ. Proc., § 526a.) Accordingly, for the purposes of venue, the action arises in the county where the agency spends the tax money that causes the alleged injury; that is, the county where such injury occurs. In the present case we have determined that the taxpayers' action challenges the expenditure of public tax monies in Los Angeles County; thus the venue for the action lies in that county.

Since the corporation known as the Regents of the University of California is a "public officer" within the meaning of Code of Civil Procedure section 393, and since all or part of plaintiffs' action arose in Los Angeles County, the venue for the action properly lies in that county.

In summary of the central issue of the case, we believe that the avenue to the courthouse should be straight and open, not blocked by restrictive statutory interpretation that compels filings in remote places. The call for the rational solution of disputes was never more pressing. The place for the presentation of constitutional argument is not the barricade in the streets but the bar in the courtroom. Access to the judicial forum should be as expeditious, inexpensive, and direct as possible.

The alternative writ of mandate heretofore issued is discharged and the petition for a peremptory writ of mandate is denied.

Wright, C. J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

**McCOMB, J.**—I dissent. I agree with the decision of the Court of Appeal, Second District, in *Regents of the University of California* v. *Superior Court* (Cal.App.) 83 Cal.Rptr. 549.