TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-102 |
| of | : | |
| | : | May 3, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE TED WEGGELAND, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May a person who represents a group of state lottery ticket purchasers be reimbursed by them for the actual and necessary costs of managing their lottery pool?

CONCLUSION

A person who represents a group of state lottery ticket purchasers may be reimbursed by them for the actual and necessary costs of managing their lottery pool.

ANALYSIS

At the November 6, 1984 General Election, the voters approved a constitutional amendment authorizing "the establishment of a California State Lottery." (Cal. Const., art. IV, § 19, subd. (d).) Contemporaneously the California State Lottery Act of 1984 (Gov. Code, §§ 8880-8880.72; "Act") was approved.[1] The constitutional amendment and implementing legislation provide an exception to the proscription that "[t]he Legislature has no power to authorize lotteries and shall prohibit the sale of lottery tickets in the State." (Cal. Const., art. IV, § 19, subd. (a).)

The Act establishes a California State Lottery Commission ("Commission") consisting of five members appointed by the Governor (§§ 8880.15-8880.23) with the authority to "exercise all powers necessary to effectuate the purposes of" the Act (§ 8880.24). The Commission is specifically directed to promulgate rules and regulations (§§ 8880.26, 8880.33) and "make available upon request to lottery game retailers a model agreement to govern the division of prizes

_____

[1]All unidentified section references are to the Government Code.

1.                                                                                          94-102

among multiple purchasers of a winning ticket or tickets purchased through a group purchase or pooling arrangement" (§ 8880.33).[2]

Section 8880.33 relating to multiple purchasers of a state lottery ticket was enacted by the Legislature in 1990. (Stats. 1990, ch. 420, § 1.)[3] The purpose of the statute was explained as follows:

"The Legislature finds and declares that the purchase of a single lottery ticket or a block of tickets by a group of people is a common and legitimate practice. However, the absence of written agreements among the ticket purchasers often leads to unnecessary confusion and disputes. The purpose of this act is to assist people in entering into agreements prior to the purchase of tickets. Nothing in this act is intended to alter or affect subdivision (g) of Section 8880.32 of the Government Code regarding the nonassignability of prizes or to change any existing lottery regulations or practices except as specified in this act." (Stats. 1990, ch. 420, § 2.)

The formation of a state lottery pool such as is contemplated in section 8880.33 gives rise to this request for our opinion. If a person is selected to represent multiple purchasers of a lottery ticket or tickets, may he or she be reimbursed by them for the actual and necessary costs of managing their lottery pool? For example, may the person charge a fee to cover such expenses as photostating each ticket purchased and providing copies to each member of the pool, maintaining a safety deposit box for the tickets, keeping all requisite records for the members, and completing the necessary forms to claim any prizes? Specifically, would the reimbursement of expenses by the lottery pool members violate section 337a of the Penal Code? The latter statute provides:

"Every person,

"1. Who engages in pool selling or bookmaking, with or without writing, at any time or place; or

"2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"3. Who, whether for gain, hire, reward, or gratuitously, or otherwise, receives, holds, or forwards, or purports or pretends to receive, hold, or forward, in any manner whatsoever, any money, thing or consideration of value, or the equivalent or memorandum thereof, staked, pledged, bet or wagered, or to be staked, pledged, bet or wagered, or offered for the purpose of being staked, pledged, bet or wagered, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast, or between men, beasts, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever; or

---

[2]Regulations have been adopted by the Commission concerning the manner in which lottery pool members are to be paid when a claim is presented for a winning ticket or spin. Official claim forms are also provided for multiple ownership claims.

[3]Section 5 of the initiative measure approved by the voters in 1984 provides: "No provision of this Act may be changed except to further its purpose by a bill passed by a vote of two-thirds of the membership of both houses of the Legislature and signed by the Governor."

"4. Who, whether for gain, hire, reward, or gratuitously, or otherwise, at any time or place, records, or registers any bet or bets, wager or wagers, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast, or between men, beasts, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever, or

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" . . . is punishable by imprisonment in the county jail for a period of not more than one year or in the state prison.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . "

We conclude that the payment of reimbursement for the actual and necessary expenses incurred in managing a state lottery pool would not constitute a violation of Penal Code section 337a.

In analyzing the question presented, we may rely upon several principles of statutory construction. When interpreting the language of the statute, we are to "accomplish a result consistent with the legislative purpose, i.e., the object to be achieved and the evil to be prevented by the legislation." (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.) "[I]t is well established that reports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain." (*Hutnick v. United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7.) "`The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'" (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.) Statutes are to be construed in a manner which makes them reasonable and workable so as to avoid mischief and absurd results. (*Regents of University of California v. Superior Court* (1970) 3 Cal.3d 529, 536-537; *City of Costa Mesa v. McKenzie* (1973) 30 Cal.App.3d 763, 770.)

As previously noted, the Legislature enacted section 8880.33 in 1990, recognizing state lottery pools to be a "legitimate practice." Numerous committee reports concerning the 1990 legislation contain the following analysis:

"*Existing law* forbids poolsharing or bookmaking which is defined in the Penal Code as, among other things, holding, forwarding, or receiving any bet `upon the result, or purported result, of any lot, chance . . . or contingent event whatsoever.' The California Lottery Act does not supersede this prohibition.

"The Lottery Act provides that lottery prizes are not assignable, except in the event of the winner's death.

"*This bill*:

"1) Legitimizes the purchase of a lottery ticket by a group of persons.

"2) Requires the Lottery Commission to develop a model agreement for dividing a prize among multiple holders of a single winning ticket, and to distribute this model agreement, upon request, to lottery retailers."

How does the legislative intent to legitimize the practice of state lottery pools apply to the reimbursement of actual and necessary expenses incurred in managing a lottery pool?

First, when read together with section 337a of the Penal Code, section 8880.33 must be construed so as to legalize state lottery pools. The two statutes may be reconciled by finding section 8880.33 to be a limited exception to the general language of Penal Code section 337a. Such was the obvious intent of the Legislature as disclosed by the committee reports at the time section 8880.33 was enacted. We believe that no question arises, therefore, as to the lawfulness of managing a state lottery pool and transmitting the actual purchase price of the lottery tickets by the pool representative. This leaves only the question of the charge imposed to defray the actual and necessary expenses incurred in managing the pool.

In our view, a reasonable construction of the Act permits those participating in lottery pools to contribute an amount to cover the actual and necessary expenses of their representative in managing the pool.[4] To conclude otherwise would be anomalous. It would mean that the contributions of the lottery pool members which constitute the wager would be legal, but that the charges for expenses, which are not part of the wager, would be illegal. We do not believe that the Legislature intended for lottery pool representatives to choose between (1) absorbing the costs of managing the pools or (2) managing illegal pools by collecting such costs.

By allowing reimbursement for expenses, no advantage is given to the representative for managing what the Legislature has termed a legitimate practice. The payment of actual and necessary costs prevents the representative from suffering economic loss. No justification for denying cost reimbursement has been suggested. On the other hand, we find nothing in the legislative history of section 8880.33 to suggest that a representative would be authorized to operate a business in which the charges would generate income for the representative in addition to reimbursement for actual and necessary expenses. Furthermore, we believe that actual and necessary expenses may be allowed only for out-of-pocket expenses generated by the specific group purchase and prize redemption effort undertaken. For example, a charge based upon a percentage of the prizes won would not be sufficiently related to the amount of expenses actually incurred.

We conclude that a person who represents a group of state lottery ticket purchasers may be reimbursed by them for the actual and necessary costs of managing their lottery pool.

* * * * *

---

[4]The Commission's regulations and model agreements are silent regarding the subject of expenses incurred by lottery ticket pool representatives.